Argued and submitted March 12, on respondent's motion to dismiss filed
April 9, and appellant's reply to respondent's motion to dismiss filed
April 23, motion to dismiss allowed; appeal dismissed June 6, 2001

## VERNON GENE ODLE,
*Appellant,*

*v.*

## S. Frank THOMPSON,
Superintendent,
Oregon State Penitentiary,
*Respondent.*

### 96C-13941; A100442

26 P3d 177

Marc Sussman argued the cause and filed the brief for appellant.

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Edmonds and Brewer, Judges.

BREWER, J.

## BREWER, J.

■ Plaintiff appealed from a judgment dismissing his petition for a writ of habeas corpus, in which he alleged that he was entitled to release on parole. While the appeal was pending, plaintiff was released from prison and was placed on active parole supervision. Defendant has moved to dismiss the appeal, arguing that plaintiff's release has rendered his petition moot. Plaintiff replies that he is currently subject to active, rather than inactive, supervision as a result of his unlawful confinement after April 1997, when, he asserts, he was entitled to release. He contends that more onerous restrictions on his liberty that result from active parole supervision require us to address the merits of his claim in order to provide relief from those consequences.

Plaintiff relies on ORS 144.085. That statute provides, in part:

"(1)   All prisoners sentenced to prison for more than 12 months shall serve active periods of parole or post-prison supervision as follows:

"* * * * *

"(b)   Twelve months of active parole or post-prison supervision for crimes in crime categories four to 10;

"(c)   Prisoners sentenced as dangerous offenders under ORS 161.725 and 161.735, for aggravated murder under ORS 163.105 or for murder under ORS 163.115 shall serve *at least three years* of active parole or post-prison supervision;

"* * * * *

"(e)   Prisoners sentenced for robbery in the first degree under ORS 164.415 or for arson in the first degree under ORS 164.325 shall serve three years of active parole or post-prison supervision.

"(2)   Except as authorized in subsections (3) and (4) of this section, when an offender has served the active period of parole or post-prison supervision established under subsection (1)(a) or (b) of this section, the supervisory authority *shall place* the offender on inactive supervision status.

"(3)   No sooner than 30 days prior to the expiration of an offender's active parole or post-prison supervision period as provided in subsection (1) of this section, the supervisory authority may send to the State Board of Parole and Post-Prison Supervision a report requesting the board to extend the active supervision period or to return the offender to active supervision status, not to exceed the supervision term imposed by the sentencing court under the rules of the Oregon Criminal Justice Commission and applicable laws, if the offender has not substantially fulfilled the supervision conditions or has failed to complete payment of restitution. The report shall include:

"(a)   An evaluation of the offender's compliance with supervision conditions;

"(b)   The status of the offender's court ordered monetary obligations, including fines and restitution, if any;

"(c)   The offender's employment status;

"(d)   The offender's address;

"(e)   Treatment program outcome;

"(f)   Any new criminal activity; and

"(g)   A recommendation that the board extend the supervision period or return the offender to active supervision status.

"(4)   After reviewing the report submitted under subsection (3) of this section, the board may extend the active supervision period or return the offender to active supervision status, not to exceed the supervision term imposed by the sentencing court under the rules of the Oregon Criminal Justice Commission and applicable laws, if it finds the offender has not substantially fulfilled the supervision conditions or has failed to complete payment of restitution." (Emphasis added.)

Plaintiff argues that, under subparagraph (1)(b), he should have been placed on active supervision for 12 months following his release and then should have been transferred to inactive supervision under paragraph (2). He contends that, because he was entitled to release in April 1997, he should have been transferred to inactive supervision status in April 1998 and should enjoy that status at the present time.

■ Plaintiff is mistaken in assuming that subparagraph (1)(b) applies to him. Plaintiff's crimes of conviction are murder, ORS 163.115, and first-degree robbery, ORS 164.415. The murder conviction brought plaintiff within subparagraph (1)(c), which required him to "serve *at least* three years of active parole or post-prison supervision." (Emphasis added.) By its terms, the statute accords discretion to a supervisory authority to determine whether and when, after three years of active supervision, an inmate convicted of murder will be transferred to inactive supervision status. Thus, even if plaintiff should have been released in April 1997, he is nonetheless not *entitled*, at any stage of parole, to be placed on inactive supervision.[1]

Plaintiff also argues that the requirements of ORS 144.085(3) and (4) apply to him regardless of whether paragraph (2) applies. Paragraphs (3) and (4) specify procedures that the Board and an offender's supervisory authority must follow before extending the offender's period of active supervision. Plaintiff contends that his supervisory authority never prepared a report, as required by paragraph (3), and that the Board never made findings, as required by paragraph (4), to justify extending his active supervision status. Therefore, plaintiff argues, he now should be on inactive supervision. Again, plaintiff's argument ignores the effect of subparagraph (1)(c). Because the Board was not required to transfer plaintiff to inactive supervision after three years of active supervision, we would be required to speculate about whether—if plaintiff had been released in 1997—his period of active supervision would have ended at any particular time. We decline to engage in such conjecture. *See Perdue v. Board of Parole*, 165 Or App 751, 754, 997 P2d 277 (2000) (applying principle in the context of judicial review of a parole revocation decision); *see also Barnes v. Thompson*, 159 Or App 383, 387, 997 P2d 431, *rev den* 329 Or 447 (1999) (applying principle in habeas corpus proceeding).[2]

---

[1] Plaintiff's robbery conviction was subject to subparagraph (1)(e), which required that plaintiff "shall serve three years of active parole or post-prison supervision." Because the "at least" language found in subparagraph (1)(c) vests the Board with discretion whether to modify plaintiff's supervision status, we consider plaintiff's remaining arguments in light of that subparagraph only.

[2] In *Barnes*, as here, the defendant sought to dismiss the plaintiff's habeas corpus appeal as moot after the plaintiff was released from prison. The plaintiff

Our decisions in *Perdue* and *Baty v. Slater*, 161 Or App 653, 984 P2d 342 (1999), *adhered to on recons* 164 Or App 779, 995 P2d 1176, *rev den* 331 Or 191 (2000), are not to the contrary. *Baty* involved a challenge to a release date by an offender who was released on post-prison supervision, rather than parole. We explained that ascertainable collateral consequences flow from an erroneous release decision for an offender subject to post-prison supervision, because the offender's term of post-prison supervision is a fixed or determinate term the beginning *and* end of which depend on the offender's date of release from prison. *Id.* at 656. We distinguished habeas corpus cases involving indeterminate sentences under the preguidelines regime, such as *Barnes*, in which there was no effective relief to be granted after the inmate's release because "even if he prevailed on the merits, the inmate would either remain in prison or on parole until the end of his sentence." *Id. Baty* is inapplicable here, because plaintiff was sentenced under the preguidelines parole system.

*Perdue* is also distinguishable. There, a plaintiff who challenged the Board's decision to revoke his parole was released pending this court's review of the revocation decision. We denied the defendant's motion to dismiss the appeal as moot, in light of the plaintiff's argument that the revocation exposed him to active parole supervision when he was released. We held that "the consequences that this petitioner faces did not result from the exercise of Board discretion but, instead, *followed automatically* from the revocation of parole." *Perdue*, 165 Or App at 754 (emphasis added). Here, on the other hand, ORS 144.085(1)(c) vests the Board with *discretion* to determine whether and when to modify plaintiff's supervision status after he has served at least three years on active supervision. Because plaintiff has been

argued that, had he been released at the correct time, he would have been on inactive, rather than active, parole supervision when he filed his petition. We held that, because the Board had discretion to determine the plaintiff's supervision status, "it would not be appropriate for this court to *order* [the] plaintiff to be placed on inactive supervision * * *." *Barnes*, 159 Or App at 387 (emphasis in original). The plaintiff did not rely on ORS 144.085, and we did not discuss that statute. We dismissed the appeal because we were unwilling to speculate as to whether and when the plaintiff's supervision status might change and, therefore, we could not conclude that the plaintiff had suffered collateral consequences from the supervisory authority's failure to release him at an earlier date. *Id.*

released from prison and has not demonstrated the existence of collateral consequences restraining his liberty that flow from the decision not to release him in 1997, his appeal is moot.

Motion to dismiss allowed; appeal dismissed.