Argued and submitted February 10, appeal dismissed as moot September 10, 2003

# DENNIS LEROY GORDON,
*Appellant,*

*v.*

# Jean HILL,
Superintendent,
Eastern Oregon Correctional Institution,
*Respondent.*

## CV00-0703; A113708

76 P3d 150

Harrison Latto argued the cause and filed the brief for appellant.

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Plaintiff petitioned for a writ of habeas corpus, asserting that he is being imprisoned unlawfully by defendant, the superintendent of the Eastern Oregon Correctional Institution. He asserts that the Board of Parole and Post-Prison Supervision (board) erred in deferring his projected parole release date to August 15, 2001, based on a finding that he suffered from a present severe emotional disturbance such as to constitute a danger to the health and safety of the community. The trial court granted defendant's motion to dismiss plaintiff's petition. Plaintiff appeals. For the reasons set forth below, we dismiss plaintiff's appeal as moot.

The relevant facts are not in dispute. On February 2, 1999, the board entered an order deferring plaintiff's projected parole release date for two years, from August 1999 to August 2001, based on a finding that plaintiff suffered from a present severe emotional disturbance such as to constitute a danger to the health and safety of the community. Plaintiff sought administrative review of that order, and the board subsequently entered an administrative review response denying relief and upholding the order. That administrative review response stated, in part:

> "[Plaintiff] committed extremely vicious crimes. He broke into the victim's house and raped her. After she reported the rape to the police, [plaintiff] returned to the victim's home, forced her and her two children into the victim's car, drove to a remote location, killed the victim and decapitated her, leaving the victim's body in the car with the children while [plaintiff] fled the scene. * * * He completely lacks empathy for the children who witnessed the crime. He admits he knew at the time of the murder that he could not stand the idea of going to prison for the rape but denies he planned to kill the victim of the rape. The board properly looked at the entire record in conjunction with the psychological evaluation and determined that [plaintiff] has a present severe emotional disturbance such as to constitute a danger to the community."

In reaching that conclusion, the board specifically relied on our decisions in *Weidner v. Armenakis*, 154 Or App 12, 959

P2d 623, *dismissed by order* July 13, 1998, *reasoning readopted and reaffirmed in Merrill v. Johnson*, 155 Or App 295, 964 P2d 284, *rev den*, 328 Or 40 (1998).

Plaintiff initiated this action in June 2000. On July 25, 2000, the board, on its own motion, reconsidered its previous administrative review response in light of this court's decision in *Peek v. Thompson*, 160 Or App 260, 980 P2d 178, *rev dismissed*, 329 Or 553 (1999). The board determined that it should apply the administrative rule at issue in *Peek* because, although plaintiff's crimes were not committed when that rule was in effect, he had opted into the matrix system when that rule was in effect. After reviewing the findings in the psychological report in the record, the board issued an order stating:

> "The board finds that [the psychological] report constitutes a finding of a present severe emotional disturbance such as to constitute a danger to the health and safety of the community. This finding is based on the entire report. Specifically, the report discusses the heinous and premeditated crimes, the fact that [plaintiff] still minimizes the crimes and his involvement, the fact that [plaintiff] still lacks insight into how or why he committed the crimes and the psychologist states there is still a real potential for violence. Based on this finding[,] the board finds that it properly deferred release 24 months."

Plaintiff then filed an amended replication in this proceeding, asserting, in part, that the psychological report on which the board relied did not make the necessary finding that plaintiff suffered from a present severe emotional disturbance. Defendant moved to dismiss, arguing that the evidence recited in the board's July 25, 2000, order provided a sufficient basis for the board's decision to defer plaintiff's projected parole release and that plaintiff therefore failed to state a claim. Plaintiff asserted in the trial court that the board's order was inconsistent with this court's decision in *Peek*. The trial court granted defendant's motion to dismiss, and this appeal ensued.

While this appeal was pending, defendant moved to hold the case in abeyance on the ground that the board, on its own motion, was conducting further administrative review of

the parole release deferral at issue in this case. We granted the motion and held the case in abeyance. Defendant subsequently moved to reactivate the appeal, noting that the board had reconsidered the July 25, 2000, order that is the issue of this appeal, and attached to its motion a copy of the new order, dated June 2, 2003. Plaintiff moved to strike from the record the board's new order, arguing that it is not properly a part of the record on appeal. We denied that motion on the ground that the court may consider evidence outside the record to determine if subsequent events have rendered a case moot.

The June 2, 2003, order on reconsideration stated, in part, that the board had determined that it had erred in its previous order on reconsideration in stating that plaintiff had opted into the matrix system at the time the rule at issue in *Peek* was in effect. The board noted that plaintiff had, in fact, opted into the matrix system in 1984, before that rule went into effect. The board stated:

> "[T]he board should have applied the rules in effect on August 10, 1984, to the findings in Dr. Page's psychological evaluation dated October 22, 1998. Dr. Page diagnosed [plaintiff] as having an Antisocial Personality Disorder under Axis II. It was Dr. Page's impression that the circumstances and nature of [plaintiff's] crimes precluded a confident assessment of his dangerousness at the time he evaluated him. He went on further to say that [plaintiff's] potential for violence may remain high even though he had programmed well for many years. * * * Although a psychiatric or psychological diagnosis is a prerequisite to the Board's consideration of whether the statutory criteria have been met, that diagnosis alone does not dictate the results. ORS 144.125(3) allows the Board to consider both the psychiatric or psychological diagnosis and other pertinent evidence in the record on exercising its judgment as to whether the prisoner's release should be deferred. The board, after applying the matrix rules in effect on August 10, 1984, when [plaintiff] first opted into the matrix system, does affirm its finding in [the previous order]. * * *
>
> "The Board considers that [plaintiff] has now exhausted all of his administrative remedies as they pertain to [the previous order]. This order is subject to judicial review as part of Dennis Leroy Gordon v. Hill, Supt., EOCI, Umatilla

County Circuit Court No. CV00-0703; Court of Appeals No. A113708."

(Internal citations and quotation marks omitted.)

In light of the board's June 2, 2003, order, we issued an order to show cause why this case should not be dismissed on the ground that the board's withdrawal of the June 25, 2000, order and issuance of the later order have rendered this case moot. We noted:

"[E]ffective January 1, 2002, the legislature amended ORS 144.335 to provide for direct judicial review of Board orders like the Board's June 2, 2003, order in this case. Among other things, ORS 144.335 requires that an offender who is the subject of such an order file a petition for judicial review within 60 days of the date of the Board's denial of administrative review and, after the Board files the record, file a motion for leave to proceed based on a showing that the judicial review presents a substantial question of law. Further, ORS 144.335(3) provides that the court's scope of review is as provided by ORS 183.482(8). By contrast, the court's scope of review on appeal in a habeas corpus action is as provided in ORS 19.415. These circumstances call into question the validity of the portion of the Board's June 2, 2003, notice purporting to inform appellant that he may obtain judicial review of that order in the context of this case."

We asked the parties to address not only the mootness question, but also whether we should hold this case in abeyance and ultimately consolidate it on appeal with the petition for judicial review of the June 2, 2003, order, should plaintiff choose to petition for judicial review of that order.

In response to our order, defendant asserts that the board's June 2, 2003, order is subject to direct judicial review and thus is not reviewable in this proceeding, despite the language in the order stating otherwise. Defendant further asserts that this case is moot because it involves a challenge to a board order that has been superseded and that no determination that this court might make concerning the superseded order would have any practical effect on the rights of plaintiff. Finally, defendant suggests that dismissal of this case would be appropriate because all of the issues plaintiff has raised in this proceeding, including the board's authority

to withdraw its July 25, 2000, order and substitute its June 2, 2003, order, can be litigated in a direct judicial review of the June 2, 2003, order.

Plaintiff asserts that the present case is not moot as to the June 2, 2003, order. He asserts that the board's most recent order is "irrelevant to the issue presented in this appeal, which is only whether the [b]oard's original order was valid." He asserts that any board action that is taken after a previously scheduled release date has passed "is irrelevant to the question of the lawfulness of a [b]oard postponement order issued before the release date arrives." For that proposition, he cites *Hamel v. Johnson*, 330 Or 180, 998 P2d 661 (2000). *Hamel*, like the present case, concerned a challenge to a two-year deferral of a parole release date. The question presented in *Hamel* was whether a later order of the board, again deferring the plaintiff's parole release date based on a new psychological evaluation, mooted the plaintiff's challenge to the earlier deferral. *Id.* at 183-84. The issue, the court said, was whether the board "had a valid reason for postponing that release date" in the first instance. *Id.* at 187. The court concluded that "the [b]oard could not rely on petitioner's *1998* psychological evaluation to justify its decision to postpone petitioner's *1997* parole release date." *Id.* at 188 (emphasis added).

Plaintiff argues that the present case is analogous—that the sole issue presented concerns the board's July 25, 2000, order, and that the later June 2, 2003, order is substantially equivalent to the subsequent order in *Hamel*. Plaintiff's proposed analysis is flawed in several respects, however.

First, his assertion that any board action that is taken after a previously scheduled release date has passed "is irrelevant to the question of the lawfulness of a [b]oard postponement order issued before the release date arrives" makes no sense in light of his own allegations in this case. This case concerns the board's decision to postpone plaintiff's projected parole release from August 1999 to August 2001. That decision initially was made before the projected parole release date, and, as noted above, in making that decision, the board did not apply the administrative rule discussed in *Peek*. However, the July 25, 2000, board order with which

plaintiff takes issue in this case—the one that applied the *Peek* rule—was itself not made until well after his projected parole release date of August 1999 had passed. Thus, if plaintiff were correct that every action taken by the board after the passage of the original projected release date is irrelevant to the legal issue presented, he would not be able to challenge the July 25, 2000, order that applied the *Peek* rule—he would be able to challenge only the February 1999 order that did not apply that rule.

The second flaw with plaintiff's assertion that this case is controlled by *Hamel* is that the fundamental problem at issue in *Hamel* is not present here. As noted, in *Hamel*, the board attempted to use a psychological evaluation conducted in 1998 in support of a later parole release deferral to justify having previously deferred the plaintiff's parole release in 1997. No similar problem is presented here.

■     The board's original order considered whether plaintiff's parole release date should be deferred from 1999 to 2001 based on the standards set forth in ORS 144.125 as interpreted by this court in *Weidner* and *Merrill*. The board's July 25, 2000, order reconsidered its application of the *Weidner/ Merrill* standard to the same parole deferral period and concluded that it should have applied the administrative rule at issue in *Peek*. The board drew that conclusion based on its erroneous belief that plaintiff had first entered the matrix parole system when the *Peek* rule was in effect. When it realized its factual mistake, the board withdrew the order that erroneously applied the *Peek* rule and, in essence, in its June 2, 2003, order, returned to its original rationale for deferring plaintiff's parole release from 1999 to 2001—that it should be deferred based on the standards set forth in ORS 144.125 as interpreted by this court in *Weidner* and *Merrill*. Unlike the situation in *Hamel*, the board here did not purport to justify plaintiff's parole deferral based on information that was not even in existence at the time it made the deferral decision. Rather, it sought to correct its misapplication of the law that was based on its misapprehension of the facts *as they existed at the time of the original parole deferral*. Such an action is qualitatively different from attempting, after the fact, to justify a decision based on evidence that did not even exist at the time of the original decision, as was the case in *Hamel*. In

sum, we reject plaintiff's suggestion that the board's June 2, 2003, order cannot render its earlier order moot given the analysis in *Hamel.*

■ Moreover, the board has authority to conduct administrative review of its orders under these circumstances. *See, e.g.,* OAR 255-080-0010(2) (board may undertake administrative review when pertinent information was available at the time of the hearing but was not considered); OAR 255-080-0012(2) (board may open a case for reconsideration of a finding without receiving a request and without regard to time limits). That an inmate has petitioned for a writ of habeas corpus concerning the earlier order does not preclude the board from conducting such an administrative review. *Davis v. Lampert,* 174 Or App 383, 387, 25 P3d 408 (2001), *rev den,* 333 Or 260 (2002). We reject plaintiff's argument that the board's June 2, 2003, order on administrative review, concerning the same parole deferral at issue in this case, is legally "irrelevant" to the issues presented here.

Finally, plaintiff argues that a finding of mootness is precluded here because of the special nature of habeas corpus actions. Plaintiff asserts that the June 2, 2003, order is, in effect, a nullity because, when he filed this habeas corpus action, the board ceased to have any authority over him and he was put "constructively in the custody of the circuit court." For that proposition, he relies on *Anderson v. Britton,* 212 Or 1, 318 P2d 291 (1957), *cert den,* 356 US 962 (1958). For the following reasons, we reject plaintiff's proposed interpretation and application of *Anderson* to these facts.

In *Anderson,* a plaintiff sought a writ of habeas corpus when he was in the custody of a county sheriff, naming that sheriff as the defendant. While the case was on appeal, the plaintiff was transferred to a penitentiary, but the warden of the penitentiary was not made a party to the proceeding. The court therefore considered whether the fact that the plaintiff was no longer in the custody of the defendant rendered the case moot. *Anderson,* 212 Or at 5. The court concluded that the case was not moot because "the function of habeas corpus cannot be defeated by a transfer of custody" because to so hold "would permit the jurisdiction of the court

to be thwarted after it has once attached." *Id.* The court continued:

"The common-law rule was that upon the return of the writ and the production of the person suing it out, the authority under which the original commitment took place was superseded, and thereafter the prisoner was in the custody of the court until the proceedings on the writ were finally determined. *Barth v. Clise,* 12 Wall 400, 79 US 400, 20 L Ed 393. *See* 25 Am Jur 245, Habeas Corpus § 148; 39 CJS 659, Habeas Corpus § 94. The same principle seems to be embodied in ORS 34.640, which provides:

" 'Custody of party pending proceedings. Until judgment is given upon the return, the party may either be committed to the custody of the sheriff of the county, or placed in such care or custody as his age and other circumstances may require.'

"* * * * *

"In this case the order of the trial court dismissing the writ also remanded plaintiff to the custody of the sheriff of Klamath county. Notwithstanding his transfer to the penitentiary, *for the purpose of this proceeding he remains constructively in the custody of the sheriff* pending determination of the appeal."

*Id.* at 5-6 (emphasis added). *Anderson* remains good law. *See, e.g., McGee v. Johnson,* 161 Or App 384, 984 P2d 341 (1999) (trial court erred in dismissing habeas corpus petition on the ground that the plaintiff had been transferred to a correctional facility in a different county).

Contrary to plaintiff's suggestion, *Anderson* does not hold that habeas corpus plaintiffs are in the "custody" of the circuit court, much less that the board loses its jurisdiction over any inmate who files a petition for a writ of habeas corpus. The case merely noted the common-law legal fiction concerning custody by a court, then held that the plaintiff remained in the constructive custody of the named defendant—not the court—even though a transfer of custody had occurred. That holding has no application to these facts. Plaintiff has been in the custody of the Department of Corrections throughout this proceeding and has properly named as

defendant in this action the superintendent of the correctional institution in which he is held. The board does not have—and never has had—physical custody of plaintiff. The board simply is the entity responsible for authorizing *parole* of an inmate in custody. ORS 144.050.

Plaintiff's novel interpretation of *Anderson* also cannot be squared with our disposition of habeas corpus cases such as *Bowers v. Thompson*, 180 Or App 605, 43 P3d 1213 (2002). In *Bowers*, as in the present case, a habeas corpus plaintiff challenged the two-year deferral of his parole release date. Before the final disposition of the plaintiff's habeas corpus petition, the board released him on parole. We dismissed the habeas corpus case as moot. If plaintiff is correct in his assertions in this case, then it follows that the board in *Bowers* should not have been permitted to release the plaintiff in that case regardless of the fact that he became entitled to release, in order to ensure that his challenge to the board's failure to release him at an earlier date would not moot his habeas corpus case. That is not what happened in *Bowers*.

We conclude that the board's June 2, 2003, order is neither irrelevant to the challenge plaintiff raises in this case nor a legal nullity. That order is properly before us, insofar as it bears on the question whether the present case is moot. It is not, however, before us on judicial review.[1] The only question is whether the June 2, 2003, order renders plaintiff's challenge to the July 25, 2000, order moot. We conclude that it does.

Our review of the intermediate order that plaintiff takes issue with on appeal could have no practical effect. Plaintiff's appeal concerns whether the board correctly applied the *Peek* rule, given the contents of the psychological report it had before it. That question is purely abstract in light of the fact that the board subsequently decided, in an

---

[1] Despite the board's assertion that the order is reviewable as a part of this appeal, there is no basis for the proposition that the board can confer jurisdiction on this court to review an order in a manner other than the manner provided for such review by statute. As noted in our order to show cause, the board's order is directly reviewable under ORS 144.335. Habeas corpus review is not available in situations where such a direct review remedy is available. ORS 34.330.

order subject to direct judicial review, that the *Peek* rule is inapplicable to the parole deferral at issue in this case. This case concerns the board's decision to defer plaintiff's parole release from August 1999 to August 2001. The series of orders concerning plaintiff's detention during that period of time culminated in the order on administrative review dated June 2, 2003. That order not only is directly reviewable, but plaintiff's arguments concerning the board's entire course of conduct regarding the deferral of plaintiff's parole from August 1999 to August 2001 all will be cognizable in the context of a proceeding on direct judicial review of that final order. Given the scope of what can be reviewed in the direct review proceeding,[2] we conclude that plaintiff's challenge in this habeas corpus case to one of the intermediate orders that has been superseded by the June 2, 2003, order is moot.

Appeal dismissed as moot.

---

[2] We note that plaintiff has, in fact, sought direct judicial review of the June 2, 2003, order. Neither party has suggested that there exists any basis for holding this case in abeyance or consolidating it with the judicial review case. Given our conclusion that the present case is moot, we now conclude such actions would be inappropriate. Plaintiff does argue, though, that it would be premature to dismiss this case because it is possible that this court, on direct review of the June 2, 2003, order, might conclude that that order should be vacated. As noted above, however, everything concerning the deferral of plaintiff's parole from August 1999 to August 2001 will be cognizable in the context of the direct judicial review. Thus, plaintiff's fears concerning "premature" dismissal of this case are unwarranted, as the arguments he makes in this case also may be made in the direct judicial review case.