Argued and submitted March 10, 2015, reversed and remanded
February 15, petition for review denied June 15, 2017 (361 Or 543)

JOHN RAY JONES,
*Petitioner,*

*v.*

BOARD OF PAROLE AND
POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A154701

391 P3d 831

Lindsey Burrows, Deputy Public Defender, argued the cause for petitioner. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Andrew M. Lavin, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

## ORTEGA, P. J.

The Board of Parole and Post-Prison Supervision postponed petitioner's parole release date based on a finding that he had a present severe emotional disturbance (PSED) that constituted a threat to the health or safety of the community. That finding was based on a psychological evaluation of petitioner conducted in 2011, prior to his scheduled release date. The board later reopened the case for administrative review of its order. As part of the review process, and after petitioner's release date had passed, the board ordered him to undergo a second psychological evaluation and exit interview. The board ultimately affirmed its earlier decision to postpone petitioner's release based primarily on the second evaluation. Petitioner seeks judicial review, raising several interrelated arguments. Generally, he argues that the record—which he contends should only encompass the first psychological evaluation— does not support the board's initial finding that he had a PSED and, as such, the board's decision is not supported by substantial evidence and substantial reason. Further, petitioner argues that the board was not authorized to rely upon the second psychological evaluation and exit interview to justify its earlier decision to defer his release date. As we explain below, we agree with petitioner. Reviewing the board's determinations for legal error, *Porter v. Board of Parole*, 281 Or App 237, 238, 383 P3d 427 (2016), we reverse and remand.

We begin with the relevant history of these proceedings. On May 30, 1988, at age 17, petitioner murdered a young woman. He was convicted of murder and third-degree robbery and was ultimately sentenced to life in prison with the possibility of parole. *See State v. Jones*, 315 Or 225, 844 P2d 188 (1992) (vacating petitioner's mandatory minimum sentence). The board set petitioner's parole release date for June 30, 2012.

In September 2011, in anticipation of petitioner's release date, petitioner underwent a psychological evaluation conducted by Dr. Templeman. As part of that evaluation, petitioner participated in several assessments, the results of

which were generally positive. In his evaluation, Templeman observed that petitioner was "clearly prepared for the interview, alert and well oriented, and displayed no symptoms of major depression, loose associations of thought or hyperactivity." With regard to petitioner's personality functioning, Templeman's report indicated that petitioner was less defensive than in a previous assessment and that he represented "one of the best adjusted types of offenders in institutional settings." He added that petitioner's profile was "relatively free from any mood disorder, psychotic disorder, or schizoid adjustment, and reflect[ed] a positive attitude toward authority, an acknowledgment of risk for substance abuse, but also some lingering alienation from family." Templeman diagnosed petitioner with Mixed Personality Disorder with Cluster B Features; however, he concluded that petitioner's "risk for violent activity upon release is relatively low and will likely remain so if he participates in follow up treatment to maintain abstinence from drugs and alcohol and personal therapy."

In November 2011, the board conducted an exit interview with petitioner during which the board asked petitioner about his crime and future parole plans. Shortly thereafter, the board issued Board Action Form (BAF) 12 in which it found that petitioner had a PSED. That order states:

> "The Board determines that the psychological evaluation does constitute a finding that you have a present severe emotional disturbance such as to constitute a danger to the health or safety of the community. *This determination is based solely on the psychological evaluation.* The Board has considered this matter under the * * * substantive standard in effect at the time of the commitment offenses, and under all applicable rules and laws."

(Emphasis added.) Based on that finding, the board postponed petitioner's release date until June 30, 2016. *See* ORS 144.125(3) (1987), *amended by* Or Laws 1993, ch 334, § 1 ("If a psychiatric or psychological diagnosis of present severe emotional disturbance such as to constitute a danger to the health or safety of the community has been made with respect to the prisoner, the board may order the

postponement of the scheduled parole release until a specified future date.").[1]

In December 2011, petitioner timely sought administrative review of BAF 12. In his administrative review request form, petitioner contended that there was no substantial evidence to sustain the board's ruling. He further claimed that, under *Peek v. Thompson*, 160 Or App 260, 980 P2d 178, *rev dismissed*, 329 Or 553 (1999), the board impermissibly considered prior psychological reports and his exit interview in reaching its decision.[2]

In January 2013, after petitioner's release date had passed, the board, on its own motion, reopened BAF 12 for reconsideration, stating, "A new psychological evaluation will be obtained and the exit interview hearing will be reconvened on April 10, 2013 to allow inmate to present information relative to the content of the second psychological evaluation." The board held petitioner's request for administrative review until the conclusion of the reopened hearing.[3]

Petitioner then completed a second psychological evaluation with Dr. McGuffin. In his report, McGuffin diagnosed petitioner with Mixed Personality Disorder with Antisocial and Avoidant Personality Features, in Partial Remission. He indicated that petitioner "is still seen as repressing awareness of uncomfortable experiences or perceptions, particularly perceptions of his self that can be perplexing" and that he "still lacks important insights about his intentions." McGuffin concluded, in part, that, if petitioner "maintains a

---

[1] We refer to the 1987 version of ORS 144.125 here and in the remainder of this opinion because that is the statute that was in effect at the time that petitioner committed his crimes.

[2] Under the *Peek* rule, "the psychologist's or psychiatrist's report must permit the Board to find that the psychologist diagnosed [the inmate] as having a severe emotional disturbance that constitutes a danger to the health or safety of the community." *Gordon v. Board of Parole*, 343 Or 618, 628-29, 175 P3d 461 (2007) (internal quotation marks omitted; brackets in original). That is, the rule limits the documents that the board may consider when determining whether an inmate has a PSED to the psychologist's report. *See Edwards v. Board of Parole*, 272 Or App 183, 189-90, 355 P3d 166, *rev den*, 358 Or 70 (2015).

[3] The board memorialized its decision to reopen the case in Board Action Form 13 (BAF 13).

positive relationship with his wife and can find employment that fulfills his career needs, he is seen as a minimal risk to reoffend in the community" but that, if he becomes "overwhelmed while trying to adjust in the community and find a job or develop[s] a conflicted relationship with his wife, or in any case begins to abuse alcohol and drugs, then his risk to reoffend would increase from minimal to high."

Thereafter, in May 2013, the board issued Administrative Review Response 2 (ARR 2). In that response, the board explained its rationale for reopening the record. It stated that, after reviewing the record on which BAF 12 was based, it had found that Templeman's[4] report did not "contain enough information one way or the other relevant to the determination required by ORS 144.125(3)." As a result, the board explained, "in order to establish whether there is a sound basis for deferral [of parole] under the statute, the Board, on its own motion, issued BAF #13 * * *, reopening BAF #12, and ordered a new psychological evaluation." The board then went on to explain why it now believed its original decision to postpone petitioner's parole was proper. In its reasoning, the board primarily relied on McGuffin's evaluation, briefly referencing Templeman's evaluation and petitioner's prior evaluations. The board clarified, however, that it referred to the "older psychological evaluations for perspective only, and did not rely on them in making its findings at the 2011 hearing." Ultimately, the board denied relief and affirmed BAF 12, concluding that it had properly determined that "the psychological evaluations constituted a finding that [petitioner had] a present severe emotional disturbance such as to constitute a danger to the health or safety of the community." On judicial review, petitioner challenges that determination.

In challenging the board's order, petitioner raises four assignments of error, which encompass two main arguments. Petitioner's first assignment and primary argument focuses on BAF 12 and challenges the board's initial decision to postpone his release. He argues that Templeman's report—the sole stated basis for the board's initial

---

[4] ARR 2 actually references "Dr. Shellman," which we understand to be a typographical error. We assume that the board meant to reference Templeman.

decision—was insufficient to establish that petitioner suffered from a PSED. That is, he contends that BAF 12 is not supported by substantial evidence or substantial reason. According to petitioner, "whether there is substantial evidence in the record to support the board's finding depends entirely upon whether Templeman's evaluation of petitioner permitted it to conclude that he suffered from a present severe emotional disturbance." Petitioner contends that Templeman's evaluation did not permit that conclusion. He argues that, even if the board could conclude that he suffered from an emotional disorder, the record lacks sufficient evidence to establish that the condition was severe or made him a danger to the community. Moreover, petitioner contends that the board offered a "mere conclusion" and failed to explain what in the record permitted that conclusion. Ultimately, without a valid finding of a PSED, petitioner contends that the board, under its own rule, was required to affirm his release date.[5] Petitioner contends that failure to release him on his scheduled release date violated his right to due process under the Fourteenth Amendment to the United States Constitution.

Alternatively, in assignments two, three, and four, petitioner argues that the board erred by reopening the evidentiary record and relying on McGuffin's evaluation to justify its earlier decision to postpone petitioner's release. In particular, petitioner contends that the board erred by reopening BAF 12 after his release date had passed, by ordering a new psychological evaluation to justify its previous decision, and by reinstating its previous order. Further, petitioner contends that, even if such practice was lawful, it was inconsistent with the board's prior practice, such that the board violated his equal protection rights under Article I, section 20, of the Oregon Constitution and the Fourteenth Amendment to the United States Constitution.

In responding to petitioner's first assignment of error, the board does not contend that Templeman's

---

[5] Specifically, petitioner cites OAR 255-60-006(8) (May 19, 1988). That rule provides, "If the evaluation does not make a finding of a severe emotional disturbance such as to constitute a danger to the health or safety of the community, the Board shall affirm the parole release date and set parole conditions."

evaluation, on its own, provided substantial evidence for the board's initial decision in BAF 12. Rather, according to the board, its decision to postpone petitioner's release date was justified because the reports of Templeman and McGuffin, considered together, provided substantial evidence to support its finding that petitioner suffers from a PSED. Similarly, the board contends that BAF 12 and ARR 2, when read together, meet the substantial reasoning requirement. That is, we understand the board's position to be that petitioner's first assignment of error is unavailing because it fails to take into consideration the second psychological evaluation and review process that took place after BAF 12 was issued.

In addressing petitioner's remaining assignments of error (two, three, and four), the board argues that it was allowed to consider McGuffin's evaluation when it agreed to review its decision in BAF 12. According to the board, it is "entitled to receive new evidence if that evidence will assist it in its reconsideration." In support of that proposition, the board cites OAR 255-080-0012(1) (June 9, 2000), which states that the board has a basis to reopen a case for review if it meets the criteria under OAR 255-080-0010 (Oct 9, 1992) (*e.g.*, if there exists "[p]ertinent information [that] was not available at the time of the hearing"). The board also notes that OAR 255-080-0012(2) (June 9, 2000) provides that the board may open a case for reconsideration "without receiving a request, without regard to time limits, and without opening all findings for review and appeal." It contends that petitioner requested administrative review prior to his release date and that, "[f]rom that point on, the law provided no specific time limits within which the board was required to finish its administrative review." Further, the board notes that it reconvened the exit interview to allow petitioner to address McGuffin's evaluation, which it contends is our endorsed practice for avoiding unfairness. Ultimately, the board argues that it properly "considered [McGuffin's] evaluation *as a part of* its determination of whether petitioner should have been released in 2012." (Emphasis in original.)

At the outset, we note that it is evident that the board, on reconsideration, determined that Templeman's

evaluation was insufficient to support its finding that petitioner had a PSED. Indeed, in ARR 2, the board acknowledged that Templeman's report did not "contain enough information one way or the other relevant to the determination required by ORS 144.125(3)," such that it had to order a new psychological evaluation—McGuffin's—"to establish whether there is a sound basis for deferral [of parole] under the statute." Moreover, on review, the board does not contend that Templeman's report, on its own, was sufficient. Therefore, the dispositive issue in this case, based on the arguments and record before us, is whether the board was allowed to consider McGuffin's evaluation and to supplement its reasoning for postponing petitioner's release date. Reviewing for legal error, we conclude that, under the circumstances presented here, the board erred by relying on McGuffin's report to justify its prior decision.[6]

To be sure, it is generally true that the board has broad authority to reopen a case for reconsideration, even when a petitioner has not requested such review. *See* OAR 255-080-0012(1) - (2) (June 9, 2000). It is also true that one of the criteria the board may consider when deciding to reopen a case is whether "[p]ertinent information was not available at the time of the hearing." OAR 255-080-0010(3) (Oct 9, 1992).[7] However, although the board generally has wide authority to reopen a case for administrative review, that authority is not without limits. *See Porter*, 281 Or App at 242 ("The board's review process * * * is bound by statutory limitations."). In this case, the board's authority is

---

[6] Although petitioner has raised constitutional arguments, we resolve this case based on subconstitutional grounds, as is our ordinary practice. *See State v. Hunt*, 271 Or App 603, 607 n 1, 352 P3d 63 (2015).

[7] Other criteria for reopening a case include:

"(1) The Board action is not supported by evidence in the record;

"(2) Pertinent information was available at the time of the hearing which, through no fault of the offender, was not considered;

"* * * * *

"(4) The action of the Board is inconsistent with its rules or policies and the inconsistency is not explained; or

"(5) The action of the Board is outside its statutory grant of discretion;

"(6) The action of the Board is outside its statutory grant of discretion."

OAR 255-080-0010 (Oct 9, 1992).

constrained by the statutory scheme governing a petitioner's parole release date, which we summarize below.

ORS 144.245(1) expressly provides that, when the board "has set a date on which a prisoner is to be released upon parole, *the prisoner shall be released on that date* unless the prisoner on that date remains subject to an unexpired minimum term."[8] (Emphasis added.) Further, "[o]nce the date is set, it can be postponed only for three statutorily prescribed reasons." *Janowski/Fleming v. Board of Parole*, 349 Or 432, 457, 245 P3d 1270 (2010). Those reasons are that (1) petitioner has a history of serious misconduct during confinement, (2) petitioner has a PSED that constitutes a danger to the community, or (3) the board deems the petitioner's release plan to be inadequate. ORS 144.125(2) - (4). "Any one of the statutory reasons for postponing a release date, *if valid*, suffices to postpone a scheduled release date." *Hamel v. Johnson*, 330 Or 180, 187, 998 P2d 661 (2000) (emphasis added). However, "[i]n the absence of one of those grounds for postponement, the inmate has a legal right to release on the scheduled release date." *Gordon v. Board of Parole*, 343 Or 618, 622, 175 P3d 461 (2007). In other words, to postpone a petitioner's release date, the board must establish that a valid statutory reason for postponement exists (or existed) prior to that date.

On judicial review, the issue is whether the board's finding of a statutorily prescribed reason to postpone release was valid. Such a finding is valid only if it is supported by substantial evidence. *See* ORS 183.482(8)(c) ("The court shall set aside or remand the order if the court finds that the order is not supported by substantial evidence in the record."). "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." *Id.*; *see, e.g.*, *Edwards v. Board of Parole*, 272 Or App 183, 190, 355 P3d 166, *rev den*, 358 Or 70 (2015) ("We examine the psychological evaluation as a whole to determine whether substantial

---

[8] OAR 255-60-006(8) (May 19, 1988) similarly indicates that, absent a finding of a PSED, "the Board shall affirm the parole release date and set parole conditions."

evidence supports the board's order finding that petitioner has a PSED."). Because the board cannot postpone a petitioner's release without a valid statutory reason, it necessarily follows that the evidence on which the board relies must have existed and been sufficient prior to the release date. *See Hamel*, 330 Or at 188 ("The board is not entitled to rely on evidence and reasons that it acquired *after* [the scheduled release date] to justify its decision not to release petitioner *then*." (Emphases added.)); *see also Porter*, 281 Or App at 243, 245 (concluding that the board lacked authority to postpone petitioner's release date absent a *timely* hearing and finding of a statutory reason to postpone release). Indeed, we have previously indicated that, "if a release date was scheduled and elapsed without the board *first* having found a valid reason to postpone release, but the inmate was erroneously not released, later events cannot furnish a basis for postponing release." *Rivas v. Persson*, 256 Or App 829, 835-36, 304 P3d 765 (2013), *rev dismissed*, 354 Or 841 (2014) (emphasis added).

In this case, the board's decision to reopen the evidentiary record as part of its administrative review was erroneous because it failed to account for the statutory limitations outlined above. The board argues, in effect, that such limitations did not apply in petitioner's case because the board's reliance on McGuffin's report was permissible under the administrative review process, given that such evidence was relevant to determining whether its initial finding, made prior to the release date, was proper. However, although it is true that the board made a finding that petitioner had a PSED prior to the release date (in BAF 12), that is not all that the statutory scheme requires. As noted above, ORS 144.125(3) requires that the board make a *valid* finding—that is, a finding based on substantial evidence that was available prior to the release date. Here, to postpone petitioner's release date, the board had to make a valid finding that petitioner had a PSED before June 30, 2012. It did not do so. In ARR 2, the board acknowledged that, prior to petitioner's 2012 release date, the evidence (Templeman's report) was insufficient to affirmatively establish that petitioner had a PSED—a necessary predicate for postponing his release date.

We similarly reject the board's argument, based on OAR 255-080-0012(2) (June 9, 2000),[9] that it could establish that petitioner suffered from a PSED after lapse of the release date, without regard to timeliness requirements. That rule simply addresses the board's authority "to reopen and reconsider a finding in its own order, after the time limit for an inmate's or offender's request for administrative review of the order has expired." *Dawson/Fletcher v. Board of Parole*, 346 Or 643, 648, 217 P3d 1055 (2009). That rule does not grant the board an unlimited period of time to develop the record and to make its required findings, especially where, as here, the statutory scheme imposes a clear timeliness requirement.

The board also cites *Jenkins v. Board of Parole*, 356 Or 186, 335 P3d 828 (2014), for the proposition that the board can, after the release date has lapsed, supplement further reasoning and evidence if it is part of the administrative review process. We likewise reject that argument. In *Jenkins*, the Supreme Court concluded that the ARR is a "part of the final order for purpose of determining whether the board's decision is supported by *substantial reason*." 356 Or at 207 (emphasis added). Based on that holding, we agree that the board is allowed to supplement its reasoning with more detailed information about how the evidence supported its prior finding. The problem in this case, however, is that the board relied exclusively on new evidence—McGuffin's report—to provide such reasoning. There is a difference between reopening a case to provide a more detailed explanation of the board's original decision, as the board did in *Jenkins*, and reopening the evidentiary record to justify that prior decision with new evidence. *Cf. Gordon v. Hill*, 189 Or App 363, 370, 76 P3d 150 (2003), *rev den*, 339 Or 280 (2004) (noting that there is a qualitative difference between the board's attempt to correct a prior misapplication of law or fact and "attempting, after the fact, to justify a decision based on evidence that did not even exist at the time of the original decision"). Ultimately, as we have previously indicated, after a release date has passed, "it does not

---

[9] OAR 255-080-0012(2) (June 9, 2000) provides that the board "may open a case for reconsideration of a finding without receiving a request, without regard to time limits, and without opening all findings for review and appeal."

suffice to later find a reason to have postponed [petitioner's] release." *Porter*, 281 Or App at 245. Accordingly, we reverse and remand with a direction that the board reinstate petitioner's release date.

Reversed and remanded.