Argued and submitted June 25, 2020, petition for judicial review dismissed as moot May 18, petition for review denied September 16, 2022 (370 Or 214)

# DAVID LEE ATKINSON,
## *Petitioner,*
*v.*
# BOARD OF PAROLE AND
# POST-PRISON SUPERVISION,
## *Respondent.*

Board of Parole and Post-Prison Supervision
A166292

511 P3d 408

In this judicial review proceeding, petitioner challenges the Board of Parole and Post-Prison Supervision's (board's) deferral of his parole release date. Petitioner argues that the board erred in concluding, under ORS 144.125(3), that he had a present severe emotional disturbance (PSED) that constituted a danger to the health or safety of the community. The board responds that it correctly deferred petitioner's release. While the case was pending, petitioner was released from custody. The board then filed a motion to dismiss the case on the ground that it was moot. On review, petitioner contends that dismissing the case would permit the board to unlawfully extend his period of active supervision from 12 months to 36 months without holding a parole revocation hearing. *Held*: The board demonstrated that a reversal of its decision to defer petitioner's release on parole would not have the practical effect of changing petitioner's parole status from active to inactive at an earlier date. To avoid mootness, an asserted collateral consequence must have a probability of occurring; a possibility is not enough. Here, the statutes and rules on which petitioner relied do not, by themselves, establish a probability that the board would have failed to initiate a revocation proceeding after petitioner's release and before his period of active supervision otherwise would have ended.

Petition for judicial review dismissed as moot.

Erik Blumenthal, Deputy Public Defender, argued the cause for petitioner. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Christopher Page, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Julia Glick.

Before Ortega, Presiding Judge, and Aoyagi, Judge, and Brewer, Senior Judge.*

BREWER, S. J.

Petition for judicial review dismissed as moot.

_____

* Brewer, S. J., *vice* Shorr, J.

**BREWER, S. J.**

A jury convicted petitioner of aggravated murder, among other charges, committed in 1984, and he was sentenced to life in prison with the possibility of parole after 20 years. While incarcerated, petitioner committed further crimes in 1988, and he received additional indeterminate consecutive sentences for those crimes.

In 2008, the Board of Parole and Post-Prison Supervision (board) determined that petitioner had met his burden of demonstrating that he was likely to be rehabilitated within a reasonable period of time, and it initially set petitioner's projected parole release date for June 28, 2013. The board held petitioner's first exit interview in 2012. Following that interview, the board postponed petitioner's projected release date for two years pursuant to ORS 144.125(3). The board held another exit interview in 2014 and again deferred his projected release date for two years. In March 2017, the board conducted a third exit interview with petitioner and again postponed petitioner's projected release date for two years, setting a new projected release date for June 28, 2019.

In this judicial review proceeding, petitioner challenges the board's 2017 deferral of his parole release date. Petitioner argues that the board erred in concluding, under ORS 144.125(3), that he had a present severe emotional disturbance (PSED) that constituted a danger to the health or safety of the community. The board filed an answering brief arguing that the board correctly deferred petitioner's release. While a reply brief was pending, petitioner was released from custody on June 28, 2019, with an active supervision review date of June 27, 2022.

The board then filed a motion to dismiss this case on the ground that it was moot as a result of petitioner's release. The board argued that no collateral consequences prevent this case from being moot. The board predicted that petitioner might argue that, had he been released earlier, he would have been eligible sooner for a possible change in his parole supervision status from active to inactive. The board argued that we previously have rejected that argument, holding that "the 'mere possibility' that the board might have changed an inmate from active to inactive supervision

status and thus relieved the inmate from several conditions of parole" earlier does not prevent an appeal from becoming moot when the appellant is released from prison. *See Miller v. Board of Parole*, 275 Or App 844, 852, 365 P3d 1136 (2015) ("mere possibility that the board might have earlier discharged [petitioner] from parole does not prevent [petitioner's] claim from becoming moot by reason of his release from prison"); *see also Green v. Baldwin*, 204 Or App 351, 357, 129 P3d 734 (2006) (same).

In response to the board's motion to dismiss, petitioner conceded that this case is very similar to *Miller*. He nonetheless asserted that the case is not moot. He contended that dismissing it would permit the board to extend his period of active supervision for two years beyond what the law allows without holding a revocation hearing at which the board must find a parole violation. Petitioner's argument was based on the interaction among certain statutes and administrative rules in effect when he committed his 1984 offenses.[1]

In particular, petitioner noted that *former* ORS 144.310(2) (1982), *repealed by* Or Laws 1993, ch 680, § 7, provided:

"(2)   A paroled prisoner shall be subject to active parole supervision during the first six months of the period of parole. The board may require a more extended period of active supervision if, in a manner provided by rule, it finds that a six-month period of supervision is incompatible with the welfare of the parolee or of society. ***

"(3)   The board may extend or renew the period of active parole supervision or delay discharge of a parolee if it finds, in the manner provided in ORS 144.343, that the parolee has violated the conditions of terms of parole."

When petitioner committed his aggravated murder offense, *former* OAR 255-90-002 (Aug 1982) provided:

"Pursuant to ORS 144.310 the Board shall establish a discharge date from active supervised parole. The period of

---

[1] The board makes no argument in this case that the statutes and rules in effect when petitioner committed his 1988 offenses govern petitioner's parole.

supervised parole shall be shown in the guideline matrix, Exhibit H-1, unless the Board provides written reasons for an extended supervision period. Extended supervision periods shall not exceed thirty-six (36) months.”

Exhibit H-1, in turn, provided for one year of active supervision prior to discharge. “The guidelines set forth in Exhibit H-1 shall govern the establishment of discharge dates. *** For discharge to be effective, the parolee must display acceptable parole performance[.]” *Former* OAR 250-90-003 (Aug 1982). Finally, *former* OAR 255-90-015 (Aug 1982), set out the hearing rights contained in subsection (3) of *former* ORS 144.310 (1982):

“(1)   In addition[] to the power of the Board to revoke parole, it may extend a discharge date one time for six months without a hearing and thereafter up to a one year period if the Board finds, after a hearing pursuant to Division 75,[2] that the parolee has violated the conditions of parole.

“(2)   Nothing contained in this rule shall be interpreted to preclude more than one extension of a discharge date by the Board. However, no extension of parole shall exceed the maximum term of sentence imposed by the court.”

Based on those statutes and rules, petitioner’s threshold argument against mootness was that the board lacked authority to impose an initial 36-month period of active supervision in its 2019 release order without holding a parole revocation hearing, and that order therefore should have provided for an initial one-year period of active supervision.[3] Petitioner asserted that, if the 2019 order had been legally correct, he would have been discharged from active supervision no later than December 27, 2020 (that is, 18 months after his release

---

[2] Division 75 set out the procedures for holding revocation hearings upon alleged violations of parole.

[3] In the heading to his response to the board’s motion to dismiss, petitioner argued:

“Petitioner’s case is not moot because a ruling on petitioner’s favor would require the board to hold a revocation hearing *before imposing the current period of active supervision*.”

(Emphasis added.)

on parole), rather than December 27, 2022 (that is, 42 months after his release).[4]

As a fallback, petitioner argued:

"However, as petitioner argues on appeal, the board lacked substantial evidence to defer petitioner's release in March 2017. Because the board lacked substantial evidence, the relevant rules and statutes required the board to release petitioner to parole on his then-active release date of June 28, 2017. Rec 196. *See Jones v.* [*Board of Parole*], 283 Or App 650, 659-61, 391 P3d 831, *rev den*, 361 Or 543 (2017) (explaining that release is mandatory unless the board makes one of the findings required by statute). At that point, petitioner's 42-month clock would begin to run, and the board could not extend his active supervision beyond December 28, 2020, without holding a revocation hearing at and finding a parole violation."

Petitioner argued that, in contrast to the petitioner in *Miller,* he did not contest the board's authority over him for the duration of his life. Petitioner contended that his case is distinguishable from *Miller* because that case did not address a petitioner's right to a parole revocation hearing under *former* OAR 255-90-015 (1982). Petitioner argued that the cases relied upon in *Miller* involved different administrative rules that did not provide for the right to a parole revocation hearing. *See Green v. Baldwin*, 204 Or App 351, 129 P3d 734 (2006) (involving the board's 1985 rules); *Dunmire v. Board of Parole*, 262 Or App 593, 325 P3d 832 (2014) (involving an offense committed in 1986, after the board had amended *former* OAR 255-90-015 (1982) and deleted subsection (1) providing for a right to a revocation hearing and violation finding). Petitioner therefore reasoned that, despite the decisions in *Miller*, *Green*, and *Dunmire*,

---

[4] Petitioner further argued:

"Assuming, *in arguendo*, the board validly imposed the 36-month extended period of active supervision, once that 36-month period is over, the board could not extend petitioner's period of active supervision longer than six additional months unless it held a revocation hearing at which it found that petitioner violated parole. Thus, adding those terms together, the board could not extend petitioner's period of active supervision beyond 42 months without holding a revocation hearing at which the board would need to find that petitioner violated his parole. If petitioner complies with parole, he would be entitled to termination of active supervision no later than 42 months after June 28, 2019, or December 28, 2022."

this case should not be dismissed as moot because dismissal "would not create the mere *possibility* that petitioner could be deprived of his right to a revocation hearing, it guarantees it." (Emphasis in original.) According to petitioner, if he complies with parole, he will currently be entitled to termination of active supervision no later than December 28, 2022. However, he asserts, if he prevails on judicial review, the board would not have been permitted to extend his active supervised parole beyond December 28, 2020, without holding a revocation hearing at which it must find a parole violation.

The Appellate Commissioner denied the board's motion to dismiss, reasoning that:

> "*Miller* does not address the right to a revocation hearing at which the board must find a parole violation before extending the active period of parole supervision. Nor did the board, in response to petitioner's identification of collateral consequences—that his period of active supervision is extended two years beyond what it could be without such a hearing, if he prevails on judicial review—demonstrate that that asserted consequence 'either does not exist or is legally insufficient.' [*State v. K. G. B.*, 362 Or 777, 786, 416 P3d 291 (2018)]. Thus, the state has not met its burden. *See State v. Stroud*, 293 Or App 314, 316-18, 428 P3d 949 (2018) (state did not meet its burden of demonstrating that appeal was moot)."

The Commissioner gave the board leave to raise the issue of mootness to the panel that considered this case on the merits. The board did not avail itself of that opportunity. However, under our independent authority to consider matters of justiciability, for the following reasons we nevertheless elect to address the issue of mootness here.

As we recently explained:

> "'Determining mootness is one part of the broader question of whether a justiciable controversy exists.' [*Brumnett v. PSRB*, 315 Or 402, 405, 848 P2d 1194 (1993).] 'One question in that analysis, *** the question at issue here, is whether the court's decision in the matter will have some practical effect on the rights of the parties.' *Dept. of Human Services v. A. B.*, 362 Or 412, 419, 412 P3d 1169 (2018) (internal quotation marks omitted). 'The burden rests with

the party moving for dismissal to establish that a case is moot.' *State v. K. J. B.*, 362 Or 777, 785, 416 P3d 291 (2018).

> "'The moving party's burden includes the burden of establishing that any collateral consequences either do not exist or are legally insufficient. That does not mean that the moving party is required to imagine all possible collateral consequences and then disprove each of them. Rather, when the moving party takes the position that a case has become moot, the responding party must identify any collateral consequences that he or she contends has the effect of producing the required practical effects of a judicial decision. At that point, the moving party must demonstrate that any of those identified collateral consequences either does not exist or is legally insufficient.'

"*Id*. at 786 (internal citations omitted). 'It will be up to the appellate court to determine the existence and significance of those effects or consequences and to decide, as a prudential matter, whether an appeal is moot.' *A. B.*, 362 Or at 426."

*Smith v. Board of Parole*, 305 Or App 773, 776, 472 P3d 805, *rev den*, 367 Or 387 (2020).

As in *Smith*, a case decided after the Commissioner entered her order:

> "[This is not] a case where the board has failed to demonstrate that the effects or consequences that petitioner identified are either legally insufficient or factually incorrect. Here, in its motion to dismiss, the board argued that 'this court's case law makes clear that the potential reversal of the board's deferral decision does not give rise to collateral consequences for petitioner's current parole preventing dismissal of this moot case.' In particular, the board asserted that, under the circumstances of this case, the mere possibility that petitioner's parole status could have changed from active to inactive at an earlier date is not a legally sufficient collateral consequence that would prevent dismissal of this case."

*Id*. at 781.

In this case, the board correctly anticipated petitioner's collateral consequences argument about a change from active to inactive supervision in its motion to dismiss,

even though the board did not specifically address petitioner's rule-based attempt to distinguish *Miller*. Because, as explained below, the board's overarching argument was sufficient to refute petitioner's counterargument, the board met its applicable burden. Moreover, the case law does not indicate that courts should consider the issue of mootness only if a party renews before the merits panel a prior motion to dismiss a case as moot that was denied by the Appellate Commissioner. For example, in *State v. Gentle*, 299 Or App 508, 450 P3d 507 (2019), and *Johnson v. Premo*, 302 Or App 578, 461 P3d 985, *rev den*, 366 Or 569 (2020), we identified the issue and subsequently dismissed those cases as moot.

Initially, we note that petitioner's threshold argument against mootness—that the board's 2019 order was legally incorrect because the board only had authority to initially impose a 12-month period of active supervision after his release on parole, not a 36-month period—is misplaced in this context. The problem is that petitioner did not challenge the imposition of the 36-month period of active supervision on the merits on review in this case,[5] but only raised the issue in his response to the board's mootness motion. In making his argument against mootness without having challenged on its merits the active supervision period set out in the 2019 order in the present case, petitioner must take the 2019 order as he finds it.[6]

That problem aside, we recognize that petitioner's challenge on the merits on review is to the board's *2017* order deferring his release on parole, and his fallback argument against mootness is that, if he had been released then, any extension of his initial period of active supervision status beyond (at the latest) December 28, 2020 would have

---

[5] Given that the board has not challenged that aspect of petitioner's argument against mootness, we assume for the sake of argument that such a challenge on the merits might have been permissible. We note, however, that petitioner did, in fact, petition for judicial review of the 2019 order, and this court dismissed that petition as moot. *Atkinson v. Board of Parole*, A171896.

[6] *Cf. Haskins v. Palmateer*, 186 Or App 159, 166-68, 63 P3d 31, *rev den*, 335 Or 510 (2003) (holding, in habeas corpus case involving same board rules, that even if board "may have failed to follow its own procedural rules in petitioner's case[,] *** [n]othing in the applicable rules or statutes affirmatively entitled petitioner to discharge from parole merely because of such a failure on the part of the board").

required a parole revocation hearing and a determination that petitioner violated parole. We conclude that the distinction that petitioner relies on does not ultimately make a difference in the mootness analysis.

The controlling decisions all indicate that an earlier commencement of active parole supervision does not ensure an earlier discharge from parole. *See, e.g.*, *Miller*, 275 Or App at 850. Underlying those decisions is the principle that, to avoid mootness, an asserted collateral consequence must have a "probability" of occurring; a possibility or speculation is not enough. That remains true even assuming everything petitioner says about how the board rules in effect when he committed his offenses would have applied to him is correct. As pertinent here, those rules are not materially different from the rules at issue in prior decisions holding that cases were moot in similar circumstances. *See, e.g.*, *former* OAR 255-90-015(2) (Aug 1982) ("Nothing contained in this rule shall be interpreted to preclude more than one extension of a discharge date by the Board. However, no extension of parole shall exceed the maximum term of sentence imposed by the court."). That is, the thrust of those prior decisions did not hinge on the mechanics or proof requirements for extending periods of active supervision under applicable board rules but, rather, on the core principle that, for indeterminate sentences, the parole period is not governed by when a person is released from prison, but, rather by when the indeterminate sentence expires. *See, e.g.*, *Miller*, 275 Or App at 850 ("We have repeatedly held that the board's authority over a parolee like petitioner [who is serving an indeterminate sentence] extends for the remainder of his sentence *** unless and until the board affirmatively discharges him from parole supervision."); *see also Smith*, 305 Or App at 777 (same).

True, our decisions in *Miller*, *Smith*, and other cases have focused on the effect of a release decision on the intensity of a parolee's supervision status (active versus inactive) in considering whether a qualifying collateral consequence existed that would defeat mootness. Here, however—analogously to those cases—a reversal of the board's 2017 decision to defer petitioner's release on parole would not

have the practical effect of changing petitioner's parole status from active to inactive at an earlier date. That is so because the statutes and rules on which petitioner relies do not, by themselves, establish a probability that the board would have failed to initiate a revocation proceeding after petitioner's release and before his period of active supervision otherwise would have ended, much less what the outcome of such a hearing would have been. As in *Smith*, "the law applicable to petitioner's sentence and the order of release allow for petitioner's active supervision to continue to the sentence expiration date, and the law does not require the board to change petitioner's parole status from active to inactive based on petitioner's initial parole date alone." 305 Or App at 780. Despite the procedural differences that petitioner touts for the rules in effect at the time of his offenses, there remains only a possibility that petitioner's parole status might have changed from active to inactive status at an earlier date, and that is not sufficient. *See Smith*, 305 Or App at 781 ("the mere possibility that petitioner's parole status could have changed from active to inactive at an earlier date is not a legally sufficient collateral consequence").

Because the board demonstrated that a reversal of its 2017 decision to defer petitioner's release on parole would not have the practical effect of changing petitioner's parole status from active to inactive at an earlier date, the board met its burden to demonstrate that petitioner's identified collateral consequence is legally insufficient and that the case is, therefore, moot.

Petition for judicial review dismissed as moot.