Argued and submitted May 5, 2005, appeal dismissed February 15, 2006

# DANIEL DWAYNE GREEN,
*Appellant,*

*v.*

# G. H. BALDWIN,
Superintendent,
Eastern Oregon Correctional Institution,
*Respondent.*

## CV97-1351; A122802

129 P3d 734

Jesse Wm. Barton argued the cause and filed the brief for appellant.

Denise Fjordbeck, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Schuman, Presiding Judge, and Edmonds* and Wollheim, Judges.

---

* Edmonds, J., *vice* Ceniceros, S. J.

WOLLHEIM, J.

**WOLLHEIM, J.**

Plaintiff appeals a judgment dismissing his writ of habeas corpus, in which he alleged that his continued incarceration violated state and federal constitutional protections against the application of *ex post facto* laws. After plaintiff filed his notice of appeal, he was released from prison on parole. Plaintiff maintains that his case remains justiciable because he has not yet been discharged from parole, and that his current parole status is a collateral consequence of an earlier improper decision to deny him parole. Because we conclude that the claimed collateral consequence is speculative, we dismiss plaintiff's appeal as moot.

In 1986, plaintiff was convicted of first-degree kidnapping, ORS 163.235, first-degree sodomy, ORS 163.405, and felon in possession of a firearm ORS 166.250. He was sentenced as a dangerous offender to 30 years in prison, with a 15-year minimum term, for the kidnapping conviction. Plaintiff was also sentenced to up to 10 years for the sodomy conviction and to up to five years for the possession conviction, with those sentences to run consecutively to the sentence for the kidnapping conviction. If required to serve his full sentences, plaintiff would be discharged in approximately 2015, or possibly later.

Plaintiff was denied parole at hearings in 1992, 1994, and 1996. After the 1996 denial, plaintiff sought administrative review arguing, *inter alia,* that the Board of Parole and Post-Prison Supervision (board) had applied legislative amendments passed in 1993 in violation of the *ex post facto* clauses of the state and federal constitutions. The board rejected those arguments in 1996. In 1998, plaintiff filed this petition for a writ of habeas corpus, again asserting that the board had violated his right to be free from the application of *ex post facto* laws. The trial court dismissed the writ with prejudice, on the ground that his replication "failed to plead ultimate facts stating a cognizable claim and, in any event, there was no *ex post facto* violation."

As noted above, after plaintiff filed his notice of appeal he was released from prison to active parole supervision. Because he remains on parole, plaintiff argues that his

release from prison does not render his case moot because a decision on the merits in his favor would have a practical effect on his rights. In particular, he urges this court to order the board to reassess "when it should have properly set a release date * * * and to use that proper release date as the commencement date of plaintiff's active supervision period. Such an order could and likely would result in plaintiff's immediate discharge from parole."

In support of his argument, plaintiff cites *Baty v. Slater*, 161 Or App 653, 984 P2d 342 (1999), *adh'd to on recons*, 164 Or App 779, 995 P2d 1176, *rev den*, 331 Or 191 (2000). *Baty* involved a habeas plaintiff who earlier had been convicted of two felonies and sentenced to probation for each. As a condition of probation, the plaintiff was ordered to serve 110 days' incarceration. When the plaintiff later violated probation, he was sentenced to 22 months' incarceration followed by three years of post-prison supervision. In a petition for a writ of habeas corpus, the plaintiff argued that he was entitled to credit for the 110 days he had been incarcerated as a condition of his probation. The trial court dismissed the writ. While his appeal to this court was pending, the plaintiff was released from prison and placed on post-prison supervision. 161 Or App at 655. The plaintiff argued, however, that his case had not thereby been rendered moot because, by dint of the trial court's failure to credit his initial period of incarceration, his overall sentence had improperly been lengthened by 110 days. We agreed with the plaintiff that his claim was not moot because a decision on the merits in his favor could have a practical effect on him. *Id.* at 656-57.

The case before us is distinguishable from *Baty* in at least one important respect. While the plaintiff in *Baty* was sentenced under the state's determinate sentencing guidelines providing for a fixed period of post-prison supervision, plaintiff here was sentenced under the preguidelines system characterized by indeterminate sentences and parole. Under the determinate sentencing system, as we noted in *Baty*, "[t]he earlier the term of imprisonment ends, the earlier the term of post-supervision *both* begins *and ends*." *Id.* at 656 (emphasis in original). But under the prior indeterminate sentencing structure, an earlier commencement of active

parole supervision does not ensure an earlier discharge from parole.

In particular, under the law in effect at the time of plaintiff's crimes, discharge from parole was within the discretion of the board if it was satisfied "that the prisoner's final release is not incompatible with the prisoner's welfare and that of society * * *." *Former* ORS 144.310 (1985), *repealed by* Or Laws 1993, ch 680, § 7. The broad discretion conferred by the statute was reflected in the board's rules in effect at the time of plaintiff's crimes.[1] Those rules charged the board with establishing both a conditional discharge date and a period of active supervised parole of either six or 12 months. *Former* OAR 255-90-002 (1985).[2] In the board's discretion, the initial period of active parole supervision could be extended up to 36 months. *Former* OAR 255-90-002(1) (1985). Moreover, the rules authorized the board, following a hearing, to deny discharge to the parolee, *former* OAR 255-90-010 (1985),[3] and to do so repeatedly if warranted, subject to the offender's maximum term of sentence. *Former* OAR

---

[1] Those rules continue to guide the board with respect to sentences imposed on offenders for crimes committed prior to December 4, 1986. *See* OAR 255-094-0000(1)(d).

[2] *Former* OAR 255-90-002 (1985) provided:

"(1) The Board shall establish a conditional discharge date. It shall also set a period of active supervised parole as shown in the conditional discharge Matrix, Exhibit I. The Board may order an extended supervision period after a hearing if it finds that such an extension is mandated. That extended supervision shall in no case exceed thirty-six (36) months.

"(2) Notwithstanding section (1) of this rule, active supervision as shown in the conditional discharge Matrix shall extend until the maximum expiration of the prison sentence if restitution remains unpaid."

The conditional discharge Matrix in Exhibit I to *former* OAR 255-90-002 (1985) determined the minimum time that offenders would be required to be on parole as a function of offense severity and the offender's criminal history/risk assessment score.

[3] *Former* OAR 255-90-010 (1985) provided:

"(1) Prior to the discharge date on the Order of Parole, the supervising parole office shall send to the Board a closing summary. This summary shall include the parolee's performance and shall recommend one of two courses:

"(a) That the parolee be discharged and certificate of discharge issued.

"(b) That the discharge not be granted with supporting reasons in the recommendation.

"(c) When discharge is not granted, a hearing shall be conducted to determine if the recommendation for extension shall be executed.

255-90-015 (1985).[4] The applicable rules therefore vested the board with considerable discretion to determine "whether and when to modify" a parolee's supervision status. *Odle v. Thompson,* 174 Or App 506, 511, 26 P3d 177 (2001).

We confronted a similar issue in *Odle,* where an offender also had petitioned for a writ of habeas corpus on the ground that he was entitled to release on parole. The trial court had dismissed the writ, the plaintiff appealed and, as in the present case, while his appeal was pending, the plaintiff was released from prison to active supervision. The plaintiff in *Odle* urged this court not to dismiss his appeal as moot because, he argued, the board's delay in releasing him on parole effectively delayed his transfer from active to inactive supervision. *Id.* at 508. We concluded that the plaintiff's argument was not well taken because, under ORS 144.085,[5]

---

"(d) The Board shall notify the parolee of the new discharge date if mandated with stated reasons for the extension or notify the parolee in writing that he has been discharged."

[4] *Former* OAR 255-90-015 (1985) provided:

"(1) Nothing contained in this rule shall be interpreted to preclude more than one extension of a discharge date by the Board. However, no extension of parole shall exceed the maximum term of sentence imposed by the court."

[5] ORS 144.085 provides, in part:

"(1) All prisoners sentenced to prison for more than 12 months shall serve active periods of parole or post-prison supervision as follows:

"* * * * *

"(c) Prisoners sentenced as dangerous offenders under ORS 161.725 and 161.735, for aggravated murder under ORS 163.105 or for murder under ORS 163.115 shall serve at least three years of active parole or post-prison supervision;

"* * * * *

"(3) No sooner than 30 days prior to the expiration of an offender's active parole or post-prison supervision period as provided in subsection (1) of this section, the supervisory authority may send to the State Board of Parole and Post-Prison Supervision a report requesting the board to extend the active supervision period or to return the offender to active supervision status, not to exceed the supervision term imposed by the sentencing court under the rules of the Oregon Criminal Justice Commission and applicable laws, if the offender has not substantially fulfilled the supervision conditions or has failed to complete payment of restitution.

"* * * * *

"(4) After reviewing the report submitted under subsection (3) of this section, the board may extend the active supervision period or return the offender to active supervision status, not to exceed the supervision term imposed by the sentencing court under the rules of the Oregon Criminal Justice Commission

the board was vested with discretion to retain him on active supervision. We declined to speculate about whether the board would have sooner transferred the plaintiff to inactive supervision had he earlier been released from prison on active supervision, and we concluded that we could not say that ascertainable collateral consequences from the board's earlier denial of parole persisted after the plaintiff's release from prison. *Id.* at 510-12. We therefore dismissed the plaintiff's appeal as moot.

Similarly, here, in light of the board's discretion over the final decision, we cannot say with certainty that plaintiff's period of supervision would be over by now—that the board would have discharged him from parole—had the board granted plaintiff's request for parole in 1996. The mere possibility that the board might have earlier discharged plaintiff from parole does not prevent plaintiff's claim from becoming moot by reason of his release from prison. *See also Barnes v. Thompson,* 159 Or App 383, 387, 977 P2d 431 (1999) ("[W]e do not believe that the 'mere possibility' that the Board might have changed an inmate from active to inactive supervision status and thus relieved the inmate from several conditions of parole is the type of collateral consequence that would prevent a habeas corpus claim that a plaintiff is entitled to immediate release from prison from becoming moot when the plaintiff is released from prison.").

Defendant superintendent also urges this court to dismiss plaintiff's claim as not justiciable on a different ground, namely that by his release from prison plaintiff lost standing under ORS 34.310 to continue to prosecute his habeas corpus claim, irrespective of whether collateral consequences attached to the 1996 decision of the board to deny parole to plaintiff at that time.[6] We reviewed and rejected a

---

and applicable laws, if it finds the offender has not substantially fulfilled the supervision conditions or has failed to complete payment of restitution."

[6] ORS 34.310 provides:

"The writ of habeas corpus ad subjiciendum is the writ designated in ORS 34.310 to 34.730, and every other writ of habeas corpus is abolished. Every person imprisoned or otherwise restrained of liberty, within this state, except in the cases specified in ORS 34.330, may prosecute a writ of habeas corpus to inquire into the cause of such imprisonment or restraint, and if illegal, to be delivered therefrom."

similar argument on reconsideration in *Baty*. 164 Or App at
782. Although it is generally true that habeas corpus relief is
available only to incarcerated offenders, we held there that a
habeas plaintiff's appeal may not be moot where a decision on
the merits will yet have a certain and practical effect on him.
*Id.* Here, however, we cannot say that a decision in plaintiff's
favor on the merits of his appeal would result in his discharge
from parole. Accordingly, we conclude that plaintiff's release
from incarceration rendered his appeal moot and, thus, not
justiciable on that ground.

Appeal dismissed.