Argued and submitted March 22, 2019, petition for judicial review dismissed as moot August 12, 2020

DREW LEONARD SMITH,
*Petitioner,*

*v.*

BOARD OF PAROLE AND
POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A165436

472 P3d 805

Petitioner, who was convicted of first-degree assault, attempted murder, attempted first-degree rape, first-degree burglary, and first-degree sexual abuse for crimes that he committed in 1988, seeks judicial review of a 2016 order of the Board of Parole and Post-Prison Supervision (the board) that deferred his projected parole release date to December 2018. On June 20, 2018, while this case was pending, the board held a subsequent scheduled exit interview with petitioner and he was released on parole. The board filed a motion to dismiss this appeal as moot, contending that, "[w]hen an adult in custody *** is no longer subject to detention under a challenged order deferring his or her release on parole, *** the challenge becomes moot because there is no effective relief that may be granted against the order." Petitioner argues that the "board has failed to establish that petitioner's claim is moot because if petitioner prevails on appeal, he would likely have an earlier date at which his period of active supervision would end." *Held*: In light of the board's discretion over when petitioner's period of active parole supervision will be completed, even if petitioner was correct that the board should have released him on parole in 2016, that would not change the uncertainty of when petitioner would be discharged from active parole supervision. Because the board demonstrated that a reversal of its 2016 decision to defer petitioner's release on parole would not have the practical effect of changing petitioner's parole status from active to inactive at an earlier date, the board met its burden to demonstrate that petitioner's identified collateral consequence is legally insufficient and that the case is, therefore, moot.

Petition for judicial review dismissed as moot.

Erik Blumenthal, Deputy Public Defender, argued the cause for petitioner. Also on the brief was Ernest G. Lannet, Chief Defender, Office of Public Defense Services.

Keith L. Kutler, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

TOOKEY, J.

Petition for judicial review dismissed as moot.

**TOOKEY, J.**

Petitioner, who was convicted of first-degree assault, attempted murder, attempted first-degree rape, first-degree burglary, and first-degree sexual abuse for crimes that he committed in 1988, seeks judicial review of a 2016 order of the Board of Parole and Post-Prison Supervision (the board) that deferred his projected parole release date to December 2018. The reason that the board deferred petitioner's release from prison was because it determined that petitioner then suffered from a "present severe emotional disturbance" constituting "a danger to the health or safety of the community."

On June 20, 2018, while this case was pending, the board held a subsequent scheduled exit interview with petitioner and concluded that petitioner had an emotional disturbance, but that the emotional disturbance was not presently so severe as to constitute a danger to the health or safety of the community. As a result, the board affirmed petitioner's parole-release date, and, on December 18, 2018, petitioner was released on parole.

Given petitioner's release from prison, the Appellate Commissioner sent the parties a letter asking them to inform us whether this case is now moot. The board responded by filing a motion to dismiss this appeal as moot, contending that, "[w]hen an adult in custody *** is no longer subject to detention under a challenged order deferring his or her release on parole, *** the challenge becomes moot because there is no effective relief that may be granted against the order." Petitioner argues that the "board has failed to establish that petitioner's claim is moot because if petitioner prevails on appeal, he would likely have an earlier date at which his period of active supervision would end." The board contends that it met its burden to show that any collateral consequences from the 2016 order are entirely speculative and that, under controlling case law, the mere possibility that the board could have exercised its discretion to allow petitioner's parole status to change from active to inactive at an earlier date is legally insufficient to render petitioner's challenge to the lawfulness of the 2016 order justiciable.

We conclude that the board met its burden to show that the collateral consequence identified by petitioner is, standing alone, legally insufficient to demonstrate a continuing practical effect, and, thus, "carried its burden to establish that the case is moot." *Brumnett v. PSRB*, 315 Or 402, 407, 848 P2d 1194 (1993).

"Determining mootness is one part of the broader question of whether a justiciable controversy exists." *Id*. at 405. "One question in that analysis, *** the question at issue here, is whether the court's decision in the matter will have some practical effect on the rights of the parties." *Dept. of Human Services v. A. B.*, 362 Or 412, 419, 412 P3d 1169 (2018) (internal quotation marks omitted). "The burden rests with the party moving for dismissal to establish that a case is moot." *State v. K. J. B.*, 362 Or 777, 785, 416 P3d 291 (2018).

> "The moving party's burden includes the burden of establishing that any collateral consequences either do not exist or are legally insufficient. That does not mean that the moving party is required to imagine all possible collateral consequences and then disprove each of them. Rather, when the moving party takes the position that a case has become moot, the responding party must identify any collateral consequences that he or she contends has the effect of producing the required practical effects of a judicial decision. At that point, the moving party must demonstrate that any of those identified collateral consequences either does not exist or is legally insufficient."

*Id*. at 786 (internal citations omitted). "It will be up to the appellate court to determine the existence and significance of those effects or consequences and to decide, as a prudential matter, whether an appeal is moot." *A. B.*, 362 Or at 426. As we have observed, "in order to prevent a case from being considered moot, a collateral consequence must be something beyond mere speculation," that is, "a collateral consequence must have a significant probability of actually occurring; a speculative or merely possible effect is not enough." *Johnson v. Premo*, 302 Or App 578, 592, 461 P3d 985, *rev den*, 366 Or 569 (2020) (internal quotation marks omitted).

A jury found petitioner guilty of first-degree assault (Count 1), attempted murder (Count 2), attempted first-degree rape (Count 4), first-degree burglary (Count 5), and first-degree sexual abuse (Count 6). The court imposed a 30-year maximum sentence, with 15-year minimums on Counts 1 and 2 to be served concurrently. On count 4, the court imposed a 10-year maximum sentence with a five-year minimum, to be served consecutively to Counts 1 and 2. On Count 5, the court imposed a 20-year maximum sentence with a 10-year minimum and ordered that sentence to be served consecutively to the sentences for Counts 1, 2, and 4. Finally, the court imposed a 60-month maximum sentence with a 30-month minimum on Count 6 to be served concurrently with all of the other sentences that it had imposed. As calculated by the board in 2016, petitioner's maximum sentence for the first-degree burglary conviction would expire on June 29, 2033.

"We have repeatedly held that the board's authority over a parolee like petitioner [who is serving an indeterminate sentence] extends for the remainder of his sentence *** unless and until the board affirmatively discharges him from parole supervision. *Miller v. Board of Parole*, 275 Or App 844, 850, 365 P3d 1136 (2015). Furthermore, we have held that "under the prior indeterminate sentencing structure, an earlier commencement of active parole supervision does not ensure an earlier discharge from parole." *Green v. Baldwin*, 204 Or App 351, 354-55, 129 P3d 734 (2006). Here, it is important to note that "[p]etitioner does not contend that the period of [active] supervision affects the length of time under which the board may exercise its supervisory authority over petitioner." Rather, as noted above, petitioner contends that a collateral consequence of the board's 2016 order, namely, that "he would likely have an earlier date at which his period of active supervision would end," prevents the dismissal of this appeal as moot. We turn to the collateral consequence identified by petitioner.

ORS 144.305 (1988) provided that "[a]ny parole in this state shall extend for the entire term of the prisoner's sentence; but active supervision of parole may be discontinued after three years if parole behavior is exemplary and

any restitution owed to the victim has been paid." ORS 144.310(2) (1988) provided, in part:

> "A paroled prisoner shall be subject to active parole supervision during the first six months of the period of parole. The board may require a more extended period of active supervision if, in a manner provided by rule, it finds that a six-month period of supervision is incompatible with the welfare of the parolee or of society."[1]

The order releasing petitioner on parole provided that "[t]he minimum active supervision period shall be 12 months, or to the sentence expiration date. Extension of the active supervision period is contingent on a recommendation from the supervising officer and Board approval." Petitioner was released on December 18, 2018 and the order provided for an "active supervision review date" of December 17, 2019.

In *Dunmire v. Board of Parole*, 262 Or App 593, 325 P3d 832 (2014), we rejected an argument similar to the one that petitioner makes here. In that case, on March 25, 1986, the petitioner committed the crimes of attempted first-degree kidnapping and attempted first-degree rape, and, in January 1987, he was sentenced to a term of imprisonment not to exceed 30 years. *Id*. at 594. The petitioner was released on parole in September 2009, and the board revoked his parole in August 2010, imposed a 30-month term of incarceration, and reset the petitioner's parole release date. *Id*. The petitioner challenged the 30-month term of incarceration imposed by the board, arguing that, although he was released on parole again in November 2012, his petition for judicial review was "not moot because collateral consequences flow from the board's unlawful decision to impose

---

[1] Under OAR 255-094-0006(1)(c), because petitioner committed first-degree burglary in 1988, petitioner's "minimum period[] of active parole" is 12 months. Under OAR 255-094-0006(5), "[a]fter a rereleased offender has completed the minimum active supervision period as provided in OAR 255-094-0006 and has substantially fulfilled the conditions of supervision, the supervising officer *may* place the offender on inactive supervision." (Emphasis added.) OAR 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(2) (1988) provided that after the board established a minimum period of supervision, a parolee would only be removed from active supervision if the Board found that the parolee had met certain criteria. OAR 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(3) to OAR 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 provided that 15 days before the expiration of the preestablished active-supervision period, the board would evaluate the parolee's status and issue a new order removing the parolee from active supervision or an order providing reasons for continuing active supervision.

30 months' incarceration following his 2010 revocation." *Id*. at 594-95.

We dismissed the petitioner's petition for judicial review as moot because the underlying premises of the petitioner's contentions—namely that, "if the board had correctly applied the governing statutes and rules, petitioner would have been released on parole 14 months earlier and, thus, would have been discharged from parole a year later or, alternatively, his parole status would have changed from active to inactive at that time"—were unavailing under existing case law. *Id*. at 595-96 (citing *Odle v. Thompson*, 174 Or App 506, 26 P3d 177 (2001) (rejecting argument that appeal was not moot because the board's delay in releasing the petitioner effectively delayed his transfer from active to inactive parole)). Because the collateral consequences that the petitioner identified were "predicated on premises that [we]re legally incorrect," we concluded that the petitioner's judicial review challenging the board's imposition of 30 months' incarceration following his 2010 revocation was moot in light of his release in November 2012. *Id*. at 596.

We reaffirmed those principles in *Miller*, 275 Or App 844. In that case, the petitioner was convicted of aggravated murder in 1982, and sought judicial review of a 2012 board order that deferred his release date from March 2012 to March 2014 based on the board's determination that the petitioner then suffered from a present severe emotional disturbance constituting a danger to the health or safety of the community. *Id*. at 845. In 2014, after the petitioner requested review of the 2012 order, petitioner was released on parole, with a tentative parole discharge date in March 2018. *Id*. The petitioner contended that his release in 2014 did not make the case moot, "arguing that a determination that his release date (and therefore the commencement of active parole supervision) should have been in 2012," and would have "lead to a discharge from active parole supervision well before March 2018" because of a temporary administrative rule authorizing the board to establish a presumptive one-year period of supervised parole or, according to the petitioner, an extended 36-month supervision term, so long as it provided written reasons for an extended supervision term. *Id*.

We observed that, given the indeterminate life sentence that the petitioner received under the preguidelines system, "the board's authority over a parolee like petitioner extends for the remainder of his sentence—in this case, life—unless and until the board affirmatively discharges him from parole supervision." *Id*. at 850-51. We also observed that, similar to the order at issue in this case, "[t]he 2014 order of release and supervised conditions explicitly states that petitioner had a 'minimum active supervision period' of 48 months or 'to the sentence expiration date,'" and that "the order indicated that the period could be further extended, although '[e]xtension of the active supervision period is contingent on a recommendation from the supervising officer and [b]oard approval.'" *Id*. at 851-52. Thus, "the case law, petitioner's order of release and supervised conditions, and board rules demonstrate[d] that petitioner's period of active parole supervision was not fixed; rather, it was merely a tentative and conditional date subject to extensions." *Id*. at 852. "In light of the board's discretion over final parole discharge decisions," we concluded that, "[e]ven were petitioner correct that the board should have released him from prison in 2012, that would not change the uncertainty of when petitioner will be discharged from active parole supervision." *Id*. Because the petitioner had been released from prison and had not identified the existence of a legally sufficient collateral consequence that flowed from the board's decision to not release him in 2012, we concluded that the case was moot. *Id*.

We reach the same conclusion here because "the case law, petitioner's order of release and supervised conditions, and board rules demonstrate that petitioner's period of active parole supervision was not fixed; rather, it was merely a tentative and conditional date subject to extensions." *Id*. As discussed above, the law applicable to petitioner's sentence and the order of release allow for petitioner's active supervision to continue to the sentence expiration date, and the law does not require the board to change petitioner's parole status from active to inactive based on petitioner's initial parole date alone. If the law limited the board's authority to extend petitioner's active supervision after his release date, the collateral consequence that petitioner identified might be "something beyond mere speculation." *Johnson*, 302 Or App at 592.

Nor is this a case where the board has failed to demonstrate that the effects or consequences that petitioner identified are either legally insufficient or factually incorrect.[2] Here, in its motion to dismiss, the board argued that "this court's case law makes clear that the potential reversal of the board's deferral decision does not give rise to collateral consequences for petitioner's current parole preventing dismissal of this moot case." In particular, the board asserted that, under the circumstances of this case, the mere possibility that petitioner's parole status could have changed from active to inactive at an earlier date is not a legally sufficient collateral consequence that would prevent dismissal of this case. *See Johnson*, 302 Or App at 592 (a "collateral consequence must have a significant probability of actually occurring; a speculative or merely possible effect is not enough" (internal quotation marks omitted)).

In light of the board's discretion over when petitioner's period of active parole supervision will be completed, even if petitioner is correct that the board should have released him on parole in 2016, that would not change the uncertainty of when petitioner would be discharged from active parole supervision. Because the board has demonstrated that a reversal of its 2016 decision to defer petitioner's release on parole would not have the practical effect of changing petitioner's parole status from active to inactive at an earlier date, the board has met its burden to demonstrate that petitioner's identified collateral consequence

---

[2] *Compare K. J. B.*, 362 Or at 788-89 (concluding that, where the petitioner identified negative social stigma associated with his involuntary commitment despite the termination of the commitment period, the appeal was not moot because the state "simply asserted—without support of any kind—that the social stigma of which petitioner complains does not exist," and, therefore, the state failed to meet its burden "to establish that there are no collateral consequences of the order of civil commitment"), *with A. B.*, 362 Or at 427-30 (concluding that the mother's appeal of a jurisdictional judgment over her child was moot where the trial court had terminated the wardship and dismissed the petition, because, although the mother identified potential collateral consequences that she believed that she faced—"(1) it will disadvantage her in any future departmental child abuse and neglect proceedings and in any custody proceedings against the child's father; (2) it limits her options for employment or volunteer work requiring a background check; and (3) it stigmatizes her with her child's service providers"—the department had "met its burden to persuade [the court] that *** the jurisdictional judgment will not have practical effects on mother's rights").

is legally insufficient and that the case is, therefore, moot.[3]

Petition for judicial review dismissed as moot.

---

[3] ORS 14.175 provides:

"In any action in which a party alleges that an act, policy or practice of a public body, as defined in ORS 174.109, or of any officer, employee or agent of a public body, as defined in ORS 174.109, is unconstitutional or is otherwise contrary to law, the party may continue to prosecute the action and the court may issue a judgment on the validity of the challenged act, policy or practice even though the specific act, policy or practice giving rise to the action no longer has a practical effect on the party if the court determines that:

"(1)  The party had standing to commence the action;

"(2)  The act challenged by the party is capable of repetition, or the policy or practice challenged by the party continues in effect; and

"(3)  The challenged policy or practice, or similar acts, are likely to evade judicial review in the future."

Petitioner asserts that, "[o]nce the court determines that error meets the three criteria of ORS 14.175, it must exercise its discretion to address the otherwise moot claim." That is incorrect; "even where all elements of ORS 14.175 are met, it is a matter of our discretion whether to review a moot issue." *Harisay v. Atkins*, 295 Or App 493, 496, 434 P3d 442 (2018), *rev allowed*, 365 Or 556 (2019); *see also Eastern Oregon Mining Association v. DEQ*, 360 Or 10, 19, 376 P3d 288 (2016) (ORS 14.175 "*permits* a court to issue a judgment on the validity of the challenged act or policy, but it does not require a court to do so" (emphasis in original)).

Here, we decline to exercise our discretion to reach petitioner's assignment of error in which he argues that the board's order was not supported by substantial evidence because it raises a case-specific and fact-bound determination that, based on petitioner's multiple psychological evaluations, petitioner suffered from a "present severe emotional disturbance" that constituted "a danger to the health or safety of the community." As such, although the substantial evidence question in this context sometimes evades appellate review if the board subsequently grants a petitioner's parole after two years, petitioner has not demonstrated that it presents a recurring legal issue that is "likely to evade review" in the future or that has "broader relevance" beyond this particular litigation. *Penn v. Board of Parole*, 365 Or 607, 623-24, 451 P3d 589 (2019); *see* ORS 144.280(1)(b) ("The board may not grant the prisoner a hearing that is more than two years from the date parole is denied unless the board finds that it is not reasonable to expect that the prisoner would be granted parole before the date of the subsequent hearing."); *Penn*, 365 Or at 623-24 (observing that "terms of post-prison supervision generally range from one to three years" and that "an appeal of a board's imposition of a special condition of post-prison supervision has never been litigated through a decision by this court in less than three years," concluding that "the board's imposition of such conditions is 'likely to evade review'" under ORS 14.175, and deciding to exercise discretion to review the assignment of error because it raised "a serious challenge to the statutory authority of the board and the constitutionality of the board's imposition of" a special condition of probation which was not limited by the "factual circumstances presented by petitioner's criminal history," and, thus, "a decision w[ould] have broader relevance"). Moreover, judicial economy does not support addressing petitioner's argument that "[t]he board's deferral of release violated due process" because petitioner's argument is not developed. Accordingly, we do not exercise our discretion under ORS 14.175 to reach the substantial evidence issue presented by petitioner's assignment of error.