Argued and submitted September 21, appeals dismissed as moot December 14, 2022, petitions for review allowed March 30, 2023 (370 Or 827)
See later issue Oregon Reports

In the Matter of P. J. N.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*and*

P. J. N.,
*Respondent,*

*v.*

T. J. N.
and D. L. P., aka D. L. P.,
*Appellants.*

Lane County Circuit Court
21JU03559; A178300 (Control)

In the Matter of L. E. N.,
aka L. E. N., a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*and*

L. E. N.,
aka L. E. N.,
*Respondent,*

*v.*

T. J. N.
and D. L. P., aka D. L. P.,
*Appellants.*

Lane County Circuit Court
21JU03560; A178305

In the Matter of P. R. N.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*and*

P. R. N.,
*Respondent,*

*v.*

T. J. N.
and D. L. P., aka D. L. P.,
*Appellants.*

Lane County Circuit Court
21JU03561; A178307

522 P3d 914

Mother and father appeal from post-jurisdiction juvenile dependency review judgments that change the placement preference for their children from in-home with mother to substitute care. Department of Human Services (DHS) disagrees with parents on the merits of their appeals but urges the Court of Appeals to dismiss the appeals as moot and, therefore, not reach the merits. Parents oppose the motions, arguing that if the court erred when it changed the placement preference, that error could impact the timing of when DHS might be required to file termination of parental rights (TPR) petitions against parents. *Held*: The appeal is moot, and the Court of Appeals dismisses it. Whether dismissal will have a practical effect on the parties requires speculation.

Appeals dismissed as moot.

Bradley A. Cascagnette, Judge.

On respondent Department of Human Services's motion to dismiss filed July 27, 2022, appellant T. J. N.'s response to motion to dismiss filed August 10, 2022, appellant D. L. P.'s response to motion to dismiss filed August 10, 2022, and respondent Department of Human Services's reply to response to motion to dismiss filed August 15, 2022.

Kristen G. Wilson argued the cause and filed the briefs for appellant T. J. N.

Elena Cristina Stross, Deputy Public Defender, argued the cause for appellant D. L. P. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Inge D. Wells, Assistant Attorney General, argued the cause for respondent Department of Human Services. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Ginger Fitch argued the cause for respondent children. Also on the brief was Youth, Rights & Justice.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

MOONEY, J.

Appeals dismissed as moot.

## MOONEY, J.

Mother and father appeal from the juvenile court's March 3, 2022, disposition review judgments entered in the dependency cases concerning their three children, which have been consolidated for purposes of appeal.[1] They assign error to the juvenile court's decision to change the designated "placement preference" for their children from in-home with mother under the terms of a safety plan to foster care. Mother and father specifically argue that the juvenile court was without authority to "remove" children from mother's home because the evidence before the court did not demonstrate that "removal" was in children's best interest. The Department of Human Services (DHS), joined by children, disagrees with parents on the merits and requests that we affirm. Children make additional arguments concerning the adequacy of the record for review, and they raise an alternative cross-assignment concerning the court's compliance with ORS 419A.253. For the reasons that follow, we do not reach the merits of this appeal because it is moot, and we dismiss it.

DHS filed a motion to dismiss this appeal arguing that events that occurred in the underlying dependency cases after entry of the March 3 review judgment rendered it moot. Specifically, it notes that the juvenile court issued a limited review judgment continuing children's placement in substitute care one month after issuing the March 3 judgment. And two months after that, DHS filed a new dependency petition raising new allegations under ORS 419B.100(1). In the context of the new petition, the juvenile court made a best interest finding and designated substitute care as the placement preference. DHS argues that the decision being challenged by parents on appeal has been superseded in each child's case by the new and subsequent placement orders, and that, even if we were to reverse the March 3 review judgment, our decision would have no practical effect on the rights of the parties. The placement preference would not change; it would continue to be

---

[1] Hereinafter—and simply for ease of reference—we refer to the consolidated appeals and the pertinent judgments and orders below in the singular, although, in each instance, separate judgments or orders were entered for each child.

substitute care unless and until the juvenile court changes that designation.

Parents oppose dismissal of the appeal, asserting that "resolution of this appeal [will have] practical effects on the rights of the parties." They argue that ORS 419B.498(1)(a) requires DHS to file a petition to terminate their parental rights once children have been in substitute care under the responsibility of DHS "for 15 months of the most recent 22 months" (the 15-out-of-22-month rule), and that reversal of the March 3 review judgment would "directly affect the [15-out-of-22] calculation." They reason that, if they prevail on appeal and the March 3 review judgment is reversed, the effect would be to reduce the number of months in substitute care for purposes of that calculation by three. If DHS prevails on appeal, and the review judgment is not reversed, then the three months would be included in that calculation. They argue that, "either way," a decision from this court would affect the rights of the parties, and they request that we deny the motion to dismiss.

The procedural history of the underlying dependency cases is not in dispute. We take judicial notice of the official case registers and the linked judgments and orders on file in the underlying juvenile dependency cases, Case Nos. 21JU03559, 21JU03560, and 21JU03561. *Velasco v. State of Oregon*, 293 Or App 1, 3 n 3, 426 P3d 114 (2018), *rev den*, 364 Or 407 (2019) (citing *State v. Bennett*, 249 Or App 379, 380 n 1, 277 P3d 586 (2012), *rev den*, 353 Or 203 (2013) (judicial notice taken of the official trial court case register)); *see also Dept. of Human Services v. J. G.*, 239 Or App 261, 263, 244 P3d 385 (2010) (same in the context of a juvenile dependency case). The pertinent procedural facts, chronologically, include:

- <u>July 27, 2021</u> - DHS filed the original dependency petition.

- <u>July 28, 2021</u> - The court issued a "Shelter Order" placing children in the temporary custody of DHS and designating the placement preference as in-home with mother subject to the July 28 safety plan.

- <u>September 9, 2021</u> - The court issued a "Judgment of Shelter Review" that continued children in the temporary custody of DHS, made a best interest finding, and changed the placement preference to substitute care.

- <u>September 14, 2021</u> - Father filed a motion for an expedited placement review hearing.

- <u>September 22, 2021</u> - The court issued a "Judgment of Shelter Review" denying father's motion "as moot," continuing temporary custody of children in DHS, and designating "the placement preference being in home with the parents as agreed upon by the parties" subject to the July 28 safety plan.

- <u>September 30, 2021</u> - The court issued a "Judgment of Jurisdiction and Disposition" that memorialized the establishment of jurisdiction over children on September 22 on the basis of parents' admissions to allegations of inadequate supervision, made children wards of the court, committed them to the legal custody of DHS, and found that it was in the best interest of children to continue in an in-home placement with mother subject to a September 9 safety plan. The designated permanency plan was reunification.

- <u>February 14, 2022</u> - The court issued a "Judgment of Disposition Review" memorializing a post-jurisdiction "shelter review hearing" that took place on February 9. It continued jurisdiction, wardship, and custody as before, denied DHS's request for a change in placement preference to substitute care, and continued the in-home placement preference subject to a February 10 safety plan.

- <u>March 3, 2022</u> - The court issued a "Judgment of Disposition Review" memorializing the occurrence of a February 28 limited review hearing, continued jurisdiction, wardship, and custody as before, made a best interest finding, and changed the designated placement preference to "foster care."

- <u>April 1, 2022</u> - The court issued a "Limited Review Judgment" continuing all orders and further gave DHS its approval to return children to an in-home plan with mother without an additional hearing if DHS deemed such a move "appropriate."

- <u>April 1 and 4, 2022</u> - Father and mother filed "Notices of Appeal" as to the March 3 judgment of disposition review.

- <u>June 3, 2022</u> - DHS filed its second dependency petition adding allegations that parents' "domestically violent relationship" and lack of parenting skills, along with father's substance abuse, interfered with their ability to safely parent their children.

- <u>June 8, 2022</u> - The court issued a "Shelter Order" ordering temporary custody in DHS on the new petition and designating the placement preference as substitute care.

- <u>July 8, 2022</u> - Father and mother filed "Notices of Appeal" as to the June 8 shelter order.

- <u>July 15, 2022</u> - The court issued a "Judgment of Shelter Review" continuing all orders and placements as before and setting the jurisdictional trial on the new petition for September 12, 2022.

- <u>October 4, 2022</u> - The court issued a "Judgment of Jurisdiction and Disposition" entered by agreement of the parties. Mother and father each admitted the allegations concerning their "domestically violent relationship" and, in addition, father admitted the substance abuse allegation. The allegations concerning lack of parenting skills were dismissed. Jurisdiction and wardship under the second petition was established, legal custody was placed in DHS, and the placement preference was designated substitute care. The permanency plan was designated reunification.

- <u>November 10, 2022</u> - The court issued a "Permanency Judgment" memorializing an October 10 permanency hearing on both petitions. The designated

permanency plan remained reunification. Place-
ment continued, in the best interest of children, as
substitute care. Findings included that DHS was
working with mother on an in-home plan, that she
was making progress and that "it is possible for the
child[ren] to be safely returned to her care in a rea-
sonable time." The court set another permanency
hearing for January 9, 2023.

To summarize, these dependency cases have been
pending since July 2021. Jurisdiction was initially estab-
lished in September 2021 when children were made wards
of the court and committed to the legal custody of DHS.
The designated permanency plan for each child has always
been reunification. The placement designation for each
child during the first seven months was, for the most part,
in-home with mother subject to various safety plans. The
court changed the placement preference to substitute care in
the March 3 disposition review judgment that is now before
us on appeal. In the months that followed, the juvenile court
repeatedly concluded that placement in substitute care was
in each child's best interest, and it ordered substitute care
as the placement preference in five subsequent judgments
or orders. We examine the procedural history and status of
the underlying cases and the parties' respective positions
on the question of mootness in the overall context of ORS
chapter 419B. The Oregon Supreme Court recently provided
this general overview of the statutory framework:

> "ORS chapter 419B provides the juvenile court with 'unique
> authority over the life of a child who comes before it, begin-
> ning with the authority to determine that a particular
> child falls within one of the categories specified in ORS
> 419B.100(1)—a determination that requires the court to
> make the child a ward of the court.' *Dept. of Human Services
> v. C. M. H.*, 368 Or 96, 104, 486 P3d 772 (2021) (internal
> quotation marks omitted); *see also* ORS 419B.100(1)(c)
> (providing, in part, that 'the juvenile court has exclusive
> original jurisdiction' in any case involving a child '[w]hose
> condition or circumstances are such as to endanger the wel-
> fare of the [child]'). Once a child has become a ward of the
> court, 'a series of complex statutes and proceedings come
> into play' that 'seek to protect the safety and well-being
> of children' and 'the rights of both children and parents.'

*Dept. of Human Services v. S. J. M.*, 364 Or 37, 50, 430 P3d 1021 (2018); *see* ORS 419B.090(2)-(4) (describing the statutory and constitutional rights of parents and children).

"Except in cases of extreme conduct under ORS 419B.502, it is the policy of the state 'to offer appropriate reunification services to parents and guardians to allow them the opportunity to adjust their circumstances, conduct or conditions to make it possible for the child to safely return home within a reasonable time.' ORS 419B.090(5). When the juvenile court places a ward in the legal custody of DHS, the juvenile court has authority to 'specify the particular type of care, supervision or services to be provided by [DHS] to wards placed in [DHS's] custody and to the parents or guardians of the wards'; however, 'the actual planning and provision of such care, supervision or services is the responsibility of [DHS].' ORS 419B.337(2)."

*Dept. of Human Services v. F. J. M.*, 370 Or 434, 441-42, 520 P3d 854 (2022). As particularly pertinent here, the juvenile court has the continuing obligation and authority throughout the life of the case to protect the rights of children and parents and to direct DHS to change a child's care, *placement*, and supervision from one type to another (*i.e.*, from in-home care to substitute care) when the current placement preference is not in the child's best interest. ORS 419B.349.

ORS chapter 419B provides for various types of hearings, with varying procedural requirements, including, for example, prejurisdictional shelter hearings, ORS 419B.183 and ORS 419B.185; jurisdictional hearings, ORS 419B.305 and ORS 419B.310; disposition hearings, ORS 419B.325; hearings to review the child's circumstances and to determine whether the court should continue jurisdiction or order changes in the child's care, placement, and supervision, ORS 419B.449; and permanency hearings, ORS 419B.470 and ORS 419B.476. Juvenile courts issue various orders and judgments following such hearings, and ORS 419A.205(1) defines which of those orders or judgments are "appealable," expressly including, among others, final orders resulting from ORS 419B.449 review hearings. DHS does not challenge the appealability of the juvenile court's March 3 "Judgment of Disposition Review." And we are satisfied that, because that review judgment changed the

designated placement preference, it is appealable as a final order from an ORS 419B.449 review hearing.

But the appeal of an appealable order or judgment should nevertheless be dismissed if it is moot. The party moving for dismissal—here, DHS—has the burden to establish that a case is moot, which includes establishing (1) that there is a controversy between the parties, and (2) that the "decision being challenged on appeal will have no further practical effect on the rights of the parties." *Dept. of Human Services v. A. B.*, 362 Or 412, 426, 412 P3d 1169 (2018).

There is clearly a controversy between the parties regarding the juvenile court's decision to change children's placement preference from in-home with mother to substitute care. DHS contends that, because the court subsequently ordered placement in substitute care, our decision—even if we were to reverse the March 3 judgment—would have no effect on the parties and that the appeal is thus moot. As noted, parents respond that our decision will determine how the period of time from March 3 (placement changed to substitute care) until June 8 (placement again designated as substitute care) will be counted for purposes of the 15-out-of-22-month rule. Certainly, any time that children spend in substitute care while they are in the custody of DHS will add time to the cumulative calculation of the number of months that they have been in substitute care during the immediate, past 22-month period, at any given point in time.

We turn, then, to ORS 419B.498, which "attempts to accommodate the rights of parents and children" when children are in substitute care "by setting a deadline for DHS to file a petition to terminate parental rights and proceed with adoption" while also providing for "an exception that allows DHS not to file by that deadline if certain determinations are made." *S. J. M.*, 364 Or at 51. The first subsection provides the 15-out-of-22-month rule already mentioned, which requires DHS to simultaneously file a termination of parental rights (TPR) petition and begin the process of locating, vetting, and approving potential adoptive parents. Subsection (2) provides exceptions to the filing rule and subsection (3) bars DHS from filing a TPR petition in cases

where the permanency plan has not yet been changed to adoption. ORS 419B.498(1) and (2) were enacted to implement the Adoption and Safe Families Act of 1997 (ASFA), 42 USC §§ 671, 675, and, like ASFA, provide a "specific deadline for moving to permanency" and an "escape clause" for those situations where there is a "compelling reason" not to move in that direction at the 15-month point. *S. J. M.*, 364 Or at 53. The accommodation built into ORS 419B.498, as a practical matter, places a measure of pressure on DHS to move forward with adoption in cases where that is the plan and avoids children languishing in foster care longer than necessary while also allowing more time for continued work toward family reunification when parents are progressing sufficiently to make reunification possible within a reasonable timeframe.

Mother and father argue, however, that no exceptions to the filing requirement of ORS 419B.498(1) would apply here. But that is not something that is possible to know at this point. Children have been in substitute care for less than 10 months. A graduated return home plan was put in place at the jurisdictional hearing in October 2022, and the record does not reflect the current status of that. Whether and when DHS would be obligated to file a TPR petition will depend on a number of circumstances as they exist at the 15-month point—if that point is reached. The most recent jurisdictional judgment includes favorable findings about mother's progress and the likelihood that children could be safely returned home to her within a reasonable period of time. If those findings remain true at some future date when children will have been in substitute care for 15 out of 22 months, they would suggest the existence of a compelling reason under ORS 419B.498(2)(b) for DHS not to file a TPR petition. Indeed, those findings would potentially bar the filing of a TPR petition under ORS 419B.498(3) because the permanency plan likely would not be changed to adoption in the face of such a finding. ORS 419B.476(5)(d). While we do not lightly dismiss parents' concern about the practical effect dismissal of this appeal may have on the timing of some future ORS 419B.498(1) filing requirement, there are too many variables that go into whether and when a TPR petition must be filed to conclude without some speculation

what practical effects dismissal might have. *See Smith v. Board of Parole*, 305 Or App 773, 776, 472 P3d 805 (2020), *rev den*, 367 Or 387 (2020) (explaining that "it will be up to the appellate court to determine the existence and significance" of the effects or collateral consequences identified by the responding party "and to decide, as a prudential matter, whether an appeal is moot" (citing *A. B.*, 362 Or at 426)); *id.* (to prevent mootness, "a collateral consequence must have a significant probability of actually occurring; a speculative or merely possible effect is not enough" (internal quotation marks and citation omitted)).

*J. G.* is instructive to our analysis. J. G. and his four siblings were wards of the court. 239 Or App at 263. J. G. was placed in-home with his mother, but his siblings were placed in substitute care. *Id.* J. G. appealed an "order arising from [the] review hearing," assigning error to the juvenile court's order designating substitute care for his siblings. *Id.* We took judicial notice of the case register and noted that there was a subsequent permanency judgment. *Id.* And, because the court was required to determine the need for continued care and placement at the permanency hearing and to include its findings and placement orders in the permanency judgment, we concluded that "the determination of which J. G. complains has been superseded by a subsequent permanency judgment," and we dismissed the appeal. *Id.* at 263-65.

This case is similar to *J. G.* In each of the judgments or orders entered after the court issued its March 3 review judgment, the court designated substitute care as the placement preference and made the required best interest findings to support that designation. Importantly, the June 8 order was issued after a shelter hearing on the new petition at which the court determined placement and made the required findings in compliance with ORS 419B.185. The placement designation reflected in the jurisdictional judgment of October 4, 2022, was entered by agreement of the parties. The judgment reflects that, in addition to jurisdiction, the court issued a disposition order pursuant to agreement of the parties. In any event, it is clear that the jurisdictional judgment superseded the earlier March 3 review judgment.

Parents urge us to nevertheless decide this appeal under ORS 14.175. Even assuming that the requirements for deciding an otherwise moot case under ORS 14.175 are satisfied, we decline to exercise our discretion to do so given the subsequent jurisdictional and permanency judgments, which superseded the review judgment in question and are themselves appealable.

Appeals dismissed as moot.